THE SHIELD COMPANY, INC., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104634. Promulgated September 28, 1943.

W. A. Schmid (an officer), for the petitioner.
W. H. Payne, Esq., for the respondent.

OPINION.

HILL. *Judge:* 1. On July 1 of each of the years 1936 and 1937 the directors of United Appliance Corporation declared a $50,000 so-called dividend payable on the following August 31. When such dividends were declared and paid, United's earnings were less than the distributions authorized and made. The directors believed, however, that expected earnings and profits for the balance of each fiscal year ended, respectively. February 28, 1937, and February 28, 1938, would make up the difference. To make possible the payments on August 31, United borrowed $50,000 from petitioner conicident therewith. United and petitioner entered the $50,000 loans upon their books as "notes payable" and "notes receivable," respectively. United repaid at least a portion of these loans with interest.

In keeping with the declarations, the dividends were paid to petitioner, United's sole stockholder, on August 31, 1936, and August 31, 1937. It is to be noted that August 31 was the last day of petitioner's fiscal year. By virtue of these loans and receipts, petitioner was able to show a substantially larger income for each of the years involved than otherwise would have been the case and was able to present a more attractive closing balance sheet. Petitioner and United had the same individuals as directors and one of these men testified that the actions were taken to bring about this very result. It is also fair to assume that United made the distributions to avoid liabiliy for surtax on undistributed profits. Significantly, the earlier dividend was declared within a few days after the enactment of the Revenue Act of 1936, containing the new undistributed profits surtax. Moreover, this course was followed upon the recommendation of United's accountant and tax adviser. On the basis of its distributions, United took credit for dividends paid in the sum of $50,000 on its tax returns for the years ended February 28, 1937, and February 28, 1938, and, hence, was not subjected to liability for surtax on undistributed profits for either year. Petitioner, on its part, disclosed the receipt of such dividends on its returns, reporting them as net income in both years and claiming a deduction therefor in its fiscal year ended August 31, 1936, and an 85 percent dividend received credit for purposes of normal tax in its return for its fiscal year ended August 31, 1937, pursuant to statutory authorization.

Actually, the 1936 distribution exceeded United's earnings through its fiscal year ended February 28, 1937, by $26,958.57 and the 1937 distribution exceeded its earnings for the year ended February 28, 1938, by $15,437.04. The basis of United's stock to petitioner was $10,000. Therefore, contends respondent, petitioner received income,

taxable as gains from the sale or exchange of property, of $16,958.57 in 1936 and $15,437.04 in 1937, the amounts by which the distributions exceeded United's earnings plus the basis of the stock to petitioner. Petitioner admits the distributions exceeded United's earnings by the stated amounts but contends that the distributions, in so far as they did exceed earnings, were illegally made and, hence, void and can not be recognized in determining a taxable gain to petitioner.

There being no dispute upon the material facts, our decision must turn solely upon the application of the pertinent statutory provisions. The situation is controlled and the result governed by section 115 (d) of the Revenue Acts of 1934 and 1936, which we quote:

SEC. 115 [REVENUE ACT OF 1934]. DISTRIBUTIONS BY CORPORATIONS

*     *     *     *     *     *     *

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property.

(d) [REVENUE ACT OF 1936.] OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property.

Observation discloses that the Revenue Act of 1936 makes one change in the language of the subsection in the Act of 1934. The phrase "and is not a dividend" is substituted for the former words "and is not out of earnings or profits." In view of the definition of "dividend" contained in section 115 (a) of the 1936 Act,[1] it is apparent that the revision does not affect the basic boundaries of the provision when brought to bear upon the specific issue here raised.

With respect to section 115 (d) of both acts, the language is clear and unambiguous. It requires, under circumstances therein set forth, that corporate distributions to shareholders be treated in the same manner as a gain from the sale or exchange of property. Such treatment must be accorded the distributions in the hands of the shareholder only if, as pertains to the distributing corporation, they were (1) not made in partial or complete liquidation; (2) not made out

---

[1] (a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

of increase in value of property accrued before March 1, 1913; and (3) not made out of earnings and profits; and, as pertains to the shareholder, if they exceeded the adjusted basis of his stock. The applicability of the taxing statute is not dependent upon or affected by provisions of state law, since no provision of the taxing statute so requires. *Burnet* v. *Harmel*, 287 U. S. 103. It is not our function to add to the statute. *Panhandle Refining Co.*, 45 B. T. A. 651. Nor can we change by interpretation the clear meaning of the words contained within the act. *O'Sullivan Rubber Co.*, 42 B. T. A. 721; affd., 120 Fed. (2d) 845. We are, therefore, not concerned with the question of whether United made the distributions in violation of Texas law. Our only inquiry as regards this issue is whether the facts surrounding the two distributions made by United to petitioner bring them within the ambit of the literal terms of section 115 (d).

There is no evidence to the effect that the distributions were made in partial or complete liquidation of United and petitioner in his brief contends that such was not the purpose. On the contrary, no act was taken toward the dissolution of United until February 1939, long after the so-called dividends were paid. Furthermore, there was here no partial liquidation, inasmuch as there was no cancellation or redemption of stock. Since United was not incorporated until June 29, 1935, it is obvious that the distributions could not be made out of an increase in the value of property accrued before March 1, 1913. It is conceded that the 1936 distribution to the extent of $26,958.57 and the 1937 distribution to the extent of $15,437.04 exceeded earnings and profits. The basis of United's stock to petitioner was $10,000. Thus, we have present every element necessary to invoke section 115 (d), and we perceive no error in respondent's application thereof.

There is some suggestion that petitioner received no taxable income in so far as the within distributions exceeded United's earnings and profits, for the reason that the payments constituted mere bookkeeping entries with no cash actually passing. It seems that petitioner would have us disregard the loans and distributions as unreal but only to the extent that it is to its benefit to have us do so. Both petitioner and United, by formal action taken by their respective boards of directors, caused the two loans to be made and the two so-called dividends to be declared. Their books were adjusted and their tax returns made to reflect the transactions. Such actions would hardly have been taken without a purpose to effectuate an economic advantage to one or both of the corporations involved. Both United and petitioner realized the advantages expected in attributing reality and substance to the transactions in question. Quite possibly the claimed tax deficiency was not anticipated. Foresight frequently

falls short of hindsight. However, we know of no law which permits a taxpayer to treat a prior event as a fiction or a fact as most conveniently serves his purpose from a tax standpoint.

Finally, petitioner argues that it should not be taxed upon the excess amounts distributed since they were returned to United. Whether the resolution of the stockholder's meeting of February 28, 1939, and the book entries made after United's dissolution were effectual to cause a return of the distributions in question, we do not decide. It is necessary only to note that these acts took place long after the close of the taxable years in question. Acccordingly, the matter of rescission and reimbursement is wholly immaterial to this proceeding. We quote a pertinent passage from *C. S. Webb*, 1 B. T. A. 269:

* * * The payment of alleged excessive dividends was not disclosed until some time subsequent to the close of the fiscal year ended June 30, 1919. The repayments and adjusting entries were not made until after the close of that year. The stockholders had the use of the $6,688.25 which the taxpayer's auditors assert were paid to them in error on August 28, '1918, from that date until after the close of the fiscal year in question, and the taxpayer was deprived of the use of that amount of money for the same time. These are facts that it is impossible for any bookkeeping entries subsequently made to affect in any way.

And in *Penn.* v. *Robertson*, 115 Fed. (2d) 167, the court said:

* * * A cardinal principle of federal income taxation requires annual returns and accounting; and this principle requires the determination of income at the close of the taxable year without regard to the effect of subsequent events. Thus, in determining whether the credits made on the note in 1930 constituted income for that year, it is necessary to disregard the rescission in 1931; and we must determine the question in the light of conditions that existed at the end of 1930, * * *

* * * The only unusual feature of this case is that it now appears, from developments subsequent to 1930, that the transaction really was invalid and was rescinded in 1931, but these later developments may not properly affect the determination of the income tax for 1930. * * *

We hold that respondent did not err in increasing petitioner's income for the taxable years ended August 31, 1936, and August 31, 1937, by the sums of $16,958.57 and $15,437.04, respectively, such sums representing distributions from a corporation in excess of its earnings plus the basis of its stock to petitioner.

2. In both taxable years here involved, petitioner paid to its three officers salaries of $10,000 each. Respondent has reduced the total deduction thereupon taken by $6,000 for each year on the ground that $24,000 per year constituted reasonable compensation. We do not know what circumstances induced respondent to conclude that $8,000 was a reasonable salary for each officer and that $10,000 was not. However that may be, respondent's determination must be deemed prima facie correct and petitioner is charged with the burden of establishing that the salaries paid were reasonable compensation for

the services performed by each officer. *Wagegro Corporation*, 38 B. T. A. 1225; *David Co.* v. *Crissom*, 64 F. (2d) 279; *Frederick L. Watson*, 25 B. T. A. 971.

The evidence discloses that petitioner's three officers were likewise officials of United Appliance Corporation, an allied concern from which they each received salaries of $5,000 per year. United engaged in the same business as did petitioner and was formed in 1935 solely to satisfy manufacturers of competing lines, both of which were formerly carried by petitioner. Since the two corporations were, in 1936 and 1937, doing together what petitioner had previously done alone, the officers dividing their time between them, it is apparent that salaries paid by United must be regarded as part and parcel of the officers' entire compensation, when comparing them with previous salaries paid by petitioner and those paid by its competitors. Consequently, the fact that the average total salaries paid their executives by 117 concerns of similar size and nature exceeded $30,000 is of very little weight, the combined salaries here being $45,000. Moreover, the test of reasonableness is not to be applied to the aggregate salaries paid, but to the salary received by each individual. *L. Schepp Co.*, 25 B. T. A. 419. For ought the record discloses, petitioner's competitors may all have had more executives among whom the deducted salaries were divided.

Petitioner paid each officer a salary of $8,000 for services rendered during its fiscal year ended August 31, 1935. Presumably this included compensation for duties thereafter attributable to United's business, United being incorporated only shortly before the close of that fiscal year. In 1936, in the face of the division of business between petitioner and United and the placement of its officers on United's pay roll, petitioner increased the salary payable to each by $2,000. There is nothing in the record which would tend to justify this increase or to substantiate the reasonableness of the salary thereupon paid each officer. As concerns each officer, we are not apprised of the character of his work, responsibilities assumed, or the hours or conditions of work, except in a most inferential way. The fact that the officers were getting older and had to bear the expense of growing families may suggest a need for greater incomes, but as regards the reasonableness of compensation from the standpoint of petitioner it is of no evidentiary value.

In previous years petitioner had paid its officers as much as $15,000 per year and there was testimony to the effect that petitioner in 1928 and 1929 had been allowed a deduction for salaries in the sum of $12,000 for each officer. This is immaterial. As was said in *Reynard Corporation*, 30 B. T. A. 451, "but the respondent had the right and it was his duty to change his determination if the facts, in his judgment, so required."

On the whole record we are of the opinion that petitioner has failed to prove the deducted salaries to have been reasonable compensation for services rendered. Accordingly, we find no error in respondent's disallowance of the salary deductions in the total sum of $6,000 for each year here involved.

3. The final issue concerns the disallowance of the addition of $1,804.05 to reserve for bad debts made during the taxable year ended August 31, 1937. Section 23 (k) Revenue Act of 1936,[2] permits a taxpayer, in the Commissioner's discretion, to make a reasonable addition to its reserve for bad debts in lieu of deducting debts ascertained to be worthless and charged off during the taxable year. Petitioner had elected to use the reserve method, having followed this procedure in all previous periods. Respondent, in determining a tax deficiency for the year ended August 31, 1937, held petitioner's reserve, excluding the 1937 addition, to be adequate to take care of all possible losses with respect to notes and accounts outstanding at the end of that year. He, therefore, denied petitioner's addition to the reserve account in its entirety. This action is assailed by petitioner.

Petitioner was engaged in the wholesale distribution of consumers' goods to a large number of retail outlets. Its gross sales during the taxable year in question approximated $400,000. Experience indicated that about one-half of one percent of its sales were lost due to worthlessness of customers' accounts. However, petitioner had neglected to charge off annually bad debts against its reserve but permitted uncollectible accounts to remain on its books. The accumulation thereof continued in the year ended August 31, 1937. Petitioner added to its reserve $1,804.05 during that year. It is apparent that this sum approximated one-half of one percent of its gross sales. We have previously approved additions to reserves for bad debts based upon a percentage of gross sales. *Proctor Shop, Inc.*, 30 B. T. A. 721. The total reserve existing at the end of the period amounted to $8,362.56, to cover accounts receivable totaling $73,769.15, of which a substantial proportion can be assumed to be worthless in view of petitioner's failure to charge off bad debts currently. The record convinces us that petitioner's addition to its reserve was reasonable considering the nature of the business.

The fact that petitioner's entire reserve, including therein this deduction, was found to be inadequate when the accounts actually

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*      *      *      *      *      *      *

(k) *Bad Debts*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

ascertained to be worthless were charged off is material in disclosing the error in respondent's determination that the reserve, less the addition, was ample. This fact, consequently, also bears on the reasonableness of petitioner's addition of the $1,804.05.

In *Farmville Oil & Fertilizer Co.* v. *Commissioner*, 78 Fed. (2d) 83, the court said:

Doubtless, under proper circumstances, the correctness of the taxpayer's estimate in fixing the amount to be added to the reserve in any year may be supported by reference to the losses actually incurred in subsequent years as was held in *Peyton Du-Pont Securities Co.* v. *Commissioner* (CCA) 55 F. (2d) 718.

We think the circumstances here are proper to be so considered.

The instant situation should not be confused with those in which a taxpayer claims an increased reserve deduction for past years based upon an insufficiency of reserve as disclosed by subsequent events. Cf. *Farmville Oil & Fertilizer Co.*, *supra*. Evidence of the insufficiency would there be immaterial, for in such cases the taxpayer must cover his losses by adjustments in reserves established in the later years. Here, however, we are simply concerned with the reasonableness of reserve additions previously claimed as a deduction. No request is made that the allowance be increased.

Under the facts of this case we feel respondent's disallowance of the $1,804.05 addition to reserve for bad debts was erroneous. We think petitioner should not be deprived of this deduction by its failure to conform to ordinary business practice in charging off bad debts against its reserve currently. It does not appear that its neglect in this respect was induced by a desire to avoid taxes or that any taxes were, in fact, saved.

We hold that petitioner is entitled to deduct $1,804.05 from income for the year ended August 31, 1937, as an addition to its reserve for bad debts.

A résumé of our conclusions is: (1) The distributions received by petitioner from United Appliance Corporation in excess of the latter's earnings plus the basis of its stock to petitioner are taxable to petitioner under section 115 (d) of the Revenue Acts of 1934 and 1936 as determined by respondent; (2) the salaries paid petitioner's officers in each taxable year exceeded a reasonable amount by $6,000 in all and petitioner's business expense deductions were properly reduced by this amount; (3) petitioner's addition of $1,804.05 to its reserve for bad debts in the taxable year ended August 31, 1937, was reasonable and a deduction in this sum is allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.*, dissents.