Summitville Face Brick Company v. Commissioner.
Summitville Face Brick Co. v. Commissioner
Docket No. 3032.
United States Tax Court
1944 Tax Ct. Memo LEXIS 150; 3 T.C.M. (CCH) 822; T.C.M. (RIA) 44267; August 5, 1944
*150 Edward M. Kovachy, Esq., 840 Leader Bldg., Cleveland, O., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves deficiencies in income and declared value excess profits tax for the year 1940 in the respective amounts of $1,445.84 and $555.04. The sole question presented is whether respondent erred in disallowing $10,000 of the $22,000 deduction which petitioner claimed as compensation for its two-officer stockholders. The tax return for the year in question was filed on an accrual basis with the collector for the 18th district of Ohio. The case was submitted upon a stipulation of facts incorporating therein several exhibits and upon oral and documentary evidence. We adopt the stipulation herewith but include in our findings only so much thereof, together with the facts otherwise adduced, as we deem material. Findings of Fact Petitioner is an Ohio corporation, organized in 1926 and having its office and plant at Summitville, Ohio. It took over the ceramic business previously carried on as co-partners by F. H. Johnson and H. K. Lynn, who thereupon became its officers and stockholders. *151 Petitioner is a leading manufacturer of ceramics and it is recognized within the industry as a maker of high quality products. It has kept abreast of technological advances in the industry. In size petitioner is a large single unit plant capable of producing about 15 million bricks a year or from $150,000 to $175,000 worth of merchandise. It employed approximately 60 persons in 1940. During that year it manufactured face brick as well as specialty lines of industrial floor brick and quarry tile. The manufacture of acid resisting products, which requires top technical skill, was commenced in that year. Lynn has at all times been secretary, treasurer and production manager of petitioner while Johnson has been its president and sales manager, save during a period from 1930 to 1935 when he was inactive. The men are brothers-in-law. In 1940 they each owned 50 percent of petitioner's stock and, with Emory Miller, comprised its board of directors. Johnson and Lynn are highly regarded by others in the industry and are able in their field of endeavor. They have spent their business lifetime in the ceramic industry. Johnson is a graduate in ceramics and structural engineering. In 1926 he was *152 offered a position as an executive of a proposed brick company at a salary of $12,000 per year, contingent upon the formation of such company. The company was never organized. During 1940 he was a director of the Ohio Brick & Tile Institute and a trustee of the Ohio Ceramicsindustries Association, a research organization. Lynn attended college for one year and also took a short course in ceramics at the University of Illinois. Johnson and Lynn have been responsible for petitioner's development and progress. During 1940 a part of petitioner's plant was in operation 24 hours a day, 7 days a week. Johnson and Lynn both lived at the plant and were on call at all times. Johnson did not keep hours but worked all day and did some work at night. Lynn worked an average of 16 hours a day. The demands upon both men were greater during 1940 than in the period 1926 to 1930 since sales were greater and petitioner was making a more diversified line of products of a more technical type. Petitioner's net sales, taxable net income and the amounts paid or credited to Johnson and Lynn as compensation for the calendar years 1926 through 1940, are as follows: Taxable
Compensation
Calendar Year
Net Sales
Net Income
Johnson
Lynn
1926 (7 months from June 1)
$ 97,499.79
$ 1,542.41
$ 5,250.00
$ 5,250.00
1927
131,303.92
1,991.98
9,000.00
9,000.00
1928
134,659.15
( 484.23)
9,000.00
9,000.00
1929
139,000.60
3,626.96
9,000.00
9,000.00
1930
127,438.85
( 695.60)
8,098.00
9,000.00
1931
89,476.55
( 6,707.64)
12,000.00
1932
34,608.38
( 19,073.40)
10,000.00
1933
28,933.19
( 10,139.66)
7,100.00
1934
27,695.84
( 15,990.21)
4,280.00
1935
46,587.30
( 4,466.06)
1,800.00
3,337.50
1936
114,591.09
132.74
5,924.00
6,825.00
1937
159,756.37
( 226.63)
7,500.00
7,537.50
1938
131,271.67
( 632.86)
6,000.00
6,000.00
1939
108,297.54
( 4,464.24)
6,000.00
6,000.00
1940 (see note below)
155,353.29
( 106.70)
11,000.00
11,000.00
Note: Calendar Year - 1940 Net Income per Books
$4,357.54
Less 1939 loss
(4,464.24)
Net Taxable Income per Tax Return
($ 106.70)
*153 About $67,000 worth of petitioner's 1940 sales were made in the first half of the year and $88,000 worth in the last half. Petitioner had experienced a strike in 1939 which ran into the early part of 1940 when it was settled. At a directors' meeting held May 26, 1939, the annual salaries of petitioner's two officers were set at $6,000 each. In February 1940 Johnson and Lynn advised M. F. McQuilkin, petitioner's auditor, that their 1940 salaries were to be $7,500 each. No formal corporate action was taken in this regard. In an application for an R.F.C. loan made by petitioner and dated March 21, 1940, the present compensation of Johnson and Lynn was stated to be $7,500. At the suggestion of the R.F.C., $13,348.98 in unpaid salaries for years prior to 1938 was forgiven by the officers in May 1940 and treated on petitioner's books as paid-in surplus. Each officer forgave $6,674.49. The application for the R.F.C. loan was rejected in January 1941 whereupon a $25,000 bank loan was secured. The proceeds of this loan were used to retire certain bonds of petitioner at a compromise figure of approximately $8,000 below their face value. On November 2, 1940, a directors' meeting was held *154 for the purpose of discussing and acting upon officers' salaries. At such meeting resolutions were adopted fixing the 1940 salaries of Johnson and Lynn at $11,000. In the discussion preceding the adoption of the resolutions, Johnson and Lynn talked about how much money petitioner would be able to make for the year 1940. Miller did not enter into the discussion. The primary consideration in paying $11,000 to each officer was petitioner's ability to pay that sum. Johnson and Lynn believed themselves entitled to that amount if the business could stand it. They knew that petitioner's 1939 operating loss could be carried over as a deduction against 1940 income. The $11,000 was paid each officer by monthly checks of $500 and by crediting his personal drawing account with $3,500 on November 30, 1940, and with $1,500 on December 31, 1940. Johnson and Lynn each reported $11,000 as compensation received on his 1940 individual income tax returns. Petitioner's net income for 1940 as shown on its books was $4,357.54. By reason of the operating loss carryover it sustained a loss of $106.70 for tax purposes. No dividend was declared in 1940. Petitioner had a $44,014.82 deficit at the beginning of *155 the year 1940 and a $40,407.28 deficit at its end. The reasonable amounts of salaries and compensation allowable and deductible by petitioner for the services of Johnson and Lynn for the year 1940 are $7,500 to each. Opinion In computing net income section 23 (a) (1) of the Internal Revenue Code permits the deduction of a reasonable allowance for salaries or other compensation for personal services actually rendered. Under this statutory authority, petitioner claims itself entitled to a $22,000 deduction for compensation equally divided between its two officers in 1940. Respondent, holding that the $11,000 salaries were excessive to the extent of $5,000 each diminished the deduction by $10,000 and the deficiencies here involved were determined accordingly. The question is whether respondent erred in taking such action. Petitioner asserts that, "The amount of $11,000 is not such an unusually large amount that it can be considered as anything else but proper compensation," it being established, as we think it is, that Johnson and Lynn each rendered valuable and indispensable services to petitioner. A salary of $11,000 per year for an able executive devoting his full time and efforts *156 to a corporation's business, on the face of it, does not seem exorbitant. In fact, we have frequently found much larger salaries to be reasonable. But this is not the solution to the present problem. Questions such as we have here can not be determined by resort to judicial notice of or our common experience with corporate salaries generally. In the first place, such salaries, for obvious reasons, vary to a degree which precludes the designation of any norm or standard against which we might test those paid by any given taxpayer. Secondly, the law imposes upon the petitioner the burden of establishing the reasonableness of salaries by affirmative evidence, since respondent's determination is favored with a presumption of correctness. Sportwear Hosiery Mills v. Commissioner, 129 Fed. (2d) 376; A. David Co. v. Grissom, 64 Fed. (2d) 279; Shield Company, Inc., 2 T.C. 763; Wagegro Corporation, 38 B.T.A. 1225. Respondent has ruled that but $6,000 to each officer constituted reasonable compensation for services rendered. Hence, petitioner can prevail only so far *157 as the evidence fairly establishes that a larger amount constituted reasonable compensation and, further, that such amount was intended and paid as compensation. Twin City Tile & Marble Co., 6 B.T.A. 1238, affirmed 32 Fed. (2d) 229; Vogue Silk Hosiery Co., 27 B.T.A. 131. Among the factors which properly may be considered in cases of this type are the quality of the services performed, duties of the officers, responsibilities assumed, experience and ability of the officers, time devoted to the work, volume of business handled, profits made, number and personnel of stockholders, dividend policy, composition of the directorate and, especially, the salaries paid like officers of other corporations similarly situated. Weight to be given any of the several factors necessarily varies with the circumstances presented by the individual case. However, the last mentioned factor is always of utmost importtance. What does the evidence here establish in respect of these factors? As before suggested, there is no question but that Johnson and Lynn, petitioner's only officers, were able and competent, and *158 that the services which they rendered petitioner were of great value. They were such in 1940, the year in question, but they were also such in 1939 and 1938 when petitioner paid them salaries of $6,000 each. The officers devoted unusually long hours to the business and, in fact, were on call at all times. Again there is no showing that this was not always so. Petitioner's sales increased in 1940 over what they were in 1939. This undoubtedly was due largely to the settlement of a 1939 labor strike during the first part of 1940 and to a lesser extent to the manufacture of the new acid resisting industrial brick. However, the 1940 sales of approximately $155,000 still fell slightly below those of 1937 when Johnson was paid $7,500 and Lynn $7,537.50. Petitioner's earnings history was definitely poor. It had net taxable income in only one of the years 1930 to 1940, inclusive, and that was but $132.74. It entered the year in question with a deficit of over $44,000. No dividends were paid in 1940 and it is not clear that a dividend has ever been paid. All petitioner's stock was owned in equal portions by Johnson and Lynn who, for all practical purposes, likewise constituted its board of directors. *159 Consequently, the size of the questioned salaries were fixed by the recipients thereof, $7,500 being the figure set in February 1940 and $11,000 being set in November 1940 to be retroactive for the year. No evidence was produced respecting the salaries paid by similar corporations to their corresponding executives. In this connection it may be mentioned that the president of a competing concern testified in petitioner's behalf, but was not interrogated as to compensation paid by his company to its officers. The secretary of the Ohio Brick & Tile Institute was also a witness for petitioner. Comparative salaries being so material in salary deduction controversies, L. & C. Mayers Co. Inc. v. Commissioner, 131 Fed. (2d) 309, certiorari denied 318 U.S. 773, it is interesting to speculate upon why no effort was made to bring such evidence into the record. Considering the facts in their entirety, in our opinion petitioner has failed to prove that the $11,000 authorized to be paid Johnson and Lynn as compensation by the resolution of November 2, 1940, was reasonable or that such sum in truth was wholly intended to be compensation. *160 Admittedly, as a general proposition, a determination by the directors of the value of services rendered to the corporation is entitled to some weight. Lydia E. Pinkham Medicine Co. v. Commissioner, 128 Fed. (2d) 986. However, such determination is not conclusive and it must be subjected to special scrutiny when it appears, as here, that the directors were also the sole officers and stockholders of the corporation and that the corporation's entire profits were paid to such persons in proportion to their stockholdings. Moreover, as was said in Becker Bros. v. United States, 7 Fed. (2d) 3, * * * The government is not bound or concluded either by any resolution which the corporation adopts, or by its method of keeping its books, upon the question as to whether any particular payment is a salary payment or a division of surplus. * * * See also Am-Plus Storage Battery Co. v. Commissioner, 35 Fed. (2d) 167; Marble & Shattuck Chair Co. v. Commissioner, 39 Fed. (2d) 393; C. S. Ferry & Son, Inc., 18 B.T.A. 1261. Petitioner paid its *161 officers $6,000 each in 1938 and 1939. There is no showing that such compensation was inadequate or below that paid by the industry generally for comparable services. We can find nothing about the conditions as they existed in 1940 which would justify the payment of officers salaries almost doubling those of 1938 and 1939. Settling the strike, per se, was not a performance calling for increased salary but should be regarded as an expected duty of petitioner's officers. The improvement in petitioner's financial condition was largely due to the officers' forgiveness of back salaries rather than some notable extra service on their part. On the other hand, there was an increase in sales in 1940 over the previous two years which we can infer was partly as a result of the marketing of the acid resisting industrial brick. The new product involved new technical problems in its manufacture and, we assume, particular efforts in its promotion. Accordingly, we have found and hold reasonable compensation for petitioner's two officers in 1940 to be $7,500 for each. This also comports with the directors' informal salary determination of February 1940 and provides salaries about equal to those *162 paid in 1937 when petitioner's sales compared in size with those of 1940. The forgiveness of back salaries with their addition to paid-in surplus, the delay in fixing the $11,000 alleged salaries until a time when the amount of 1940 earnings were fairly certain, the fact that they were so set primarily upon petitioner's ability to pay, the consequent want of any taxable net income, and the establishment of compensation in the same proportion as the stock ownership of the officers, among other circumstances, in the absence of clear evidence negatory thereof, compel the conclusion that the distribution of the $22,000 to the officers, so far as it exceeded $15,000, was either a distribution of earnings or an indirect means of recovering a portion of the back salaries which had been fogiven earlier in the year. In either event it is not deductible. The situation here presented is very similar to the one spelled out by the facts in Helvering v. Superior Wines & Liquors, Inc., 134 Fed. (2d) 373. There three men owned the taxpayer's stock in equal portions and also were its officers and directors. As directors they previously had fixed their salaries as *163 officers at $6,000. On December 31, 1936, they resolved to forgive salaries accrued to that date in the total amount of $27,000. On December 31, 1937, they resolved to make each officer's salary for 1937 $9,000 and thereupon credited an additional $3,000 to each officer on the corporation's books. No dividends were paid. Net taxable income was only $4,528.48 on net sales of $723,000. In sustaining our determination that $6,000 per annum for each of the three officers constituted reasonable compensation for services rendered, the Circuit Court of Appeals for the Eighth Circuit said: Where, as in this case, three men who own all of the stock of their corporation carry on its business themselves and thereby produce corporation income in respect to which a tax is due the government, they must be required to exercise good faith in their accounting and return of income to the government. As they do the work and the investment in the capital stock of the corporation is their own, they have a wide latitude to use their own without injury to others, but having adopted the corporate form they are subject to the tax laws and regulations applicable to corporations. They may satisfy the corporation's *164 credit and creditor relations when they apply the earnings to salaries for themselves and enter such amounts on the corporation's books to surplus. But their right to make such application is not absolute in respect to income tax relations between the corporation and the government. There the law and regulations compel honest and good faith determination of the fair and reasonable amounts of the corporation's assets applicable to such salaries and permit deduction from the corporation's income of only such amounts for salaries as are reasonable under all the circumstances. * * * We think the language quoted is peculiarly apposite here. We hold that petitioner is entitled to deduct under section 23 (a) (1) as reasonable compensation for the services of its two officers the amount of $15,000. Decision will be entered under Rule 50.