McBride Building Trust, First Mortgage Bond Company, Inc., Trustee v. Commissioner.
Building Trust v. Commissioner
Docket No. 22836.
United States Tax Court
1951 Tax Ct. Memo LEXIS 364; 10 T.C.M. (CCH) 13; T.C.M. (RIA) 51004; January 9, 1951
*364 John M. Hudson, Esq., 1170 Penobscot Bldg., Detroit 26, Mich., for the petitioner. Cyrus A. Neuman, Esq., for the respondent. LEMIRE Memorandum Opinion LEMIRE, Judge: This proceeding involves a deficiency in income tax for the fiscal year ended July 31, 1945, in the amount of $807.77. Petitioner claims that there is an overpayment of $138. The sole issue presented is the amount of depreciation which the petitioner as trustee is entitled to deduct in computing the taxable net income of the trust for the taxable year. This case was submitted without a hearing upon a written stipulation of facts under Rule 30 of the Rules of Practice of this Court. The stipulated facts are so found and we adopt the written stipulation as our findings. The material facts are as follows: [The Facts] The petitioner is a Virginia corporation with its principal place of business in Detroit, Michigan. Its income tax return for the fiscal year ended July 31, 1945, was made on a cash basis of accounting and was filed with the collector of internal revenue for the district of Michigan, at Detroit. By trust mortgage dated December 1, 1926, certain improved real estate in Detroit, known *365 as the McBride Building, was conveyed by James F. and Cora McBride to the petitioner as trustee to secure bonds in the face amount of $123,500 issued by the McBrides. The bonds later were in default as to both principal and interest and proceedings for the foreclosure of the mortgage were instituted. The petitioner as trustee bid in the property at the foreclosure sale and acquired absolute title to it on behalf of the bondholders when the period of exemption expired on February 7, 1932. Under the terms of the trust mortgage the petitioner was authorized to acquire and handle the property as directed and approved by the holders of 51 per cent in interest of all the bonds. The terms and conditions upon which the trust property should be handled, managed, controlled, and disposed of for the benefit of all the bondholders were determined by agreement entered into as of December 31, 1931, between more than 51 per cent in interest of the bondholders and the petitioner. The agreement provided in pertinent part as follows: "WHEREAS it is not practicable at the present time to sell said property without great sacrifice and it is desirable that the premises be properly furnished and put *366 into condition so that the same may be rented and income derived therefrom for the benefit of bondholders until such time as advantageous sale can be made, and it is necessary to raise funds for such purpose and to pay taxes and the cost, charges and expenses of the Trustee in connection with the property. * * *
"WHEREAS, the Trustees have deemed it beneficial to bondholders that the title to the premises be acquired, and that the property be maintained and handled, on behalf of bondholders until such time as an advantageous sale can be made; and it is deemed necessary that a plan be adopted and followed for the proper and effectual handling and ultimate disposal of said property for the benefit of bondholders in the anticipated event that said premises are not redeemed and title becomes absolute in said Trustee on behalf of bondholders; * * *
"1. This agreement and determination shall be effective and binding upon all bondholders and upon the Trustee if and when the holders of 51% in interest of all the holders of bonds secured by said mortgage now outstanding shall join herein by the execution of this agreement or the execution of separate concurrent instruments in *367 writing signifying their participation herein and depositing their bonds as hereinafter provided. "2. The Trustee shall issue trust certificates evidencing beneficial ownership in the premises pro rata to all holders of bonds on the basis of one unit for each $10.00 so represented. "3. The Trustee shall have full power to hold, handle, manage, control, rent, lease, furnish, equip, improve, preserve and protect said property and collect the rents, issues and profits thereof in accordance with its best judgment and discretion; also to mortgage or sell said premises subject to the conditions hereinafter mentioned. "4. It is the intent that the property should be put and maintained in good condition, and furnished and equipped so far as needed, and the largest possible revenues derived therefrom pending liquidation by sale thereof, at a time when conditions are more favorable than at present. It is agreed that five (5) years' time shall be allowed to liquidate, and that sale shall not be made earlier without the written consent of fifty-one per cent (51%) in interest of all certificate holders. "5. The Trustee shall have power to borrow moneys at any time or times, for the purpose *368 of paying any part of the purchase price on foreclosure that was applicable to the payment of taxes, Trustee's advances or other items having priority over the bonds, of paying the reasonable expense and compensation of Trustee incident to this reorganization, of paying taxes and assessments due or to become due, of paying for any furniture or equipment deemed necessary and any expense necessary to place in first class condition or for preserving and protecting the property held in trust; and for the purpose of securing any such loans the Trustee may mortgage said premises, any such mortgage to be a first lien thereon having priority to all other rights and interests. "6. On any sale of said property the net proceeds shall be distributed pro rata to all holders of certificates then outstanding. After paying the costs and expenses of operation, taxes, maintenance, protection and improvement of said property, including the reasonable compensation of the Trustee, any net revenues, in the judgment of the Trustee not required to meet payments on any mortgage or otherwise in connection with the property, shall be distributed to certificate holders pro rata; provided that should income *369 available for distribution in any one year exceed five per cent (5%) upon the outstanding certificates the excess may be used by the Trustee to purchase or retire outstanding certificates at a price not exceeding $10.00 per unit, purchases to be made at lowest prices offered, and retirement by lot. All certificates so purchased or retired shall be cancelled by the Trustee. "7. The Trustee shall be entitled to reimbursement for all advances made by it and for all necessary expenses and attorney fees, and to reasonable compensation for its services in connection with this reorganization and its operations hereunder. The Trustee shall have a lien on the premises and upon any funds or property in its hands superior to all interests except such mortgage as the Trustee may place on the premises pursuant hereto. * * *
"11. This agreement shall be construed liberally to carry out its purposes. The Trustee shall be protected in acting upon any notice, request, consent, certificate, declaration or other paper or document or signature believed by the Trustee to be genuine and to have been signed by the proper party or parties, and in any action deemed by the Trustee authorized and proper *370 hereunder and shall not be liable for errors or mistakes nor for anything in good faith done or omitted nor at all except for its own bad faith. The Trustee shall not have any personal liability to third persons arising out of any debts contracted by it or otherwise, any such liability to be confined solely to the property and funds in its hands." Pursuant to the terms of the trust mortgage and the agreement of December 31, 1931, the petitioner managed, controlled, and operated the trust property on behalf of the bondholders until February 1, 1946, when the property was sold. The petitioner administered the trust under the jurisdiction of and in accordance with the order of the Circuit Court of Wayne County, Michigan, during the entire term of the trust. The bondholders deposited their bonds with the petitioner and received trustee's depository receipts and certificates of beneficial interest in the property. The petitioner registered the bonds deposited and the certificates issued in the names of the bondholders as evidence of their rights and beneficial interests in the trust property. During the term of the trust periodical financial statements were made to the holders of certificates *371 of beneficial interest in the trust property and to the clerk in the circuit court. At the date the petitioner acquired the trust property for the bondholders the face amount of bonds outstanding was $123,500, and past due and unpaid property taxes amounted to $19,781.26, exclusive of interest and penalties. Beginning with its fiscal year 1933 the petitioner filed income tax returns for the trust, claiming in each return a deduction for depreciation sustained on the property. Various adjustments to the cost basis of the property and to the deductions for depreciation claimed were made by the respondent and accepted by the petitioner on several of the returns, but a deduction was allowed to the petitioner for depreciation in each year except the taxable year ended July 31, 1945. In the return filed for that year the petitioner claimed a deduction for depreciation of $3,683.44, computed on the basis and at the rate previously allowed by the respondent. Respondent determined that no depreciation on the property was allowable to petitioner for that year. The following table shows the results of the operation of the property by the trustee during the fiscal years 1933 through 1945: Net Income
Depre-
Balance of
Fiscal
Gross
Operating
Before De-
ciation
of Net
Year
Income
Expense
preciation
Allowed
Income
1933
$ 6,915.26
$ 6,643.18
$ 272.08
$ 5,222.00
($4,949.92)
1934
7,520.63
5,672.14
1,848.49
5,259.24
( 3,410.75)
1935
11,705.60
6,954.42
4,751.18
5,296.56
( 545.38)
1936
13,957.01
7,857.31
6,099.70
5,302.76
796.94
1937
15,992.44
8,108.04
7,884.40
5,302.77
2,581.63
1938
18,806.01
8,215.54
10,590.47
4,748.34
5,842.13
1939
16,993.67
9,947.45
7,046.22
4,752.77
2,293.45
2-1 to 7-31, 1939
7,932.45
5,216.09
2,716.36
2,376.81
339.55
1940
16,727.65
10,927.10
5,800.55
3,655.02
2,145.53
1941
19,937.08
9,747.24
8,189.84
3,708.08
4,481.76
1942
20,126.45
10,965.20
9,161.25
3,712.48
5,448.77
1943
19,281.06
9,926.31
9,354.75
3,676.62
5,678.13
1944
19,305.62
10,984.74
8,320.88
3,682.02
4,638.86
1945
19,756.37
11,824.40
7,931.97
* 3,683.44
4,248.53
$212,957.30
$122,989.16
$89,968.14
$60,378.91
$29,589.23
*372 Fiscal
Amount
Amount
Year
Distributed
withheld
1933
($4,949.92)
1934
( 3,410.75)
1935
( 545.38)
496.94 2,581.63 1938
5,842.13 $ 627.50
1,665.95 2-1 to 7-31, 1939
627.50
( 287.95)
1940
1,864.20
281.33 1941
2,324.90
2,156.86 1942
2,090.40
3,358.37 1943
1,966.40
3,711.73 1944
1,895.40
2,743.46 1945
2,255/5-
1,993.03 $13,651.80
$15,937.43 On February 1, 1946, the petitioner sold the trust property for $79,133.75. A net gain on the sale of $12,749.72 was reported in the petitioner's return for the period August 1, 1945, to February 1, 1946, computed in accordance with the adjustments made by the respondent to the depreciable property on the returns for prior years, except that the depreciation claimed by the petitioner for the fiscal year 1945 was taken into account, although the respondent disallowed the deduction of depreciation for that year. In 1946 the petitioner distributed to the holders of certificates of beneficial interest $90,012.60, representing the net proceeds of sale of the property, *373 the net income for the current year's operation, and the accumulations from operations in prior years. The reconcilation of the final distribution to holders of certificates of beneficial interest in the trust is as follows: Total distribution 1946
$90,012.60
Net income after depreciation 1946
$ 3,422.84
1946 depreciation
1,842.44
1946 net income before depreciation
$ 5,265.28
Net proceeds of sale
79,133.75
84,399.03
Prior accumulations distributed
$ 5,613.57
Prior years accumulated depreciation
$60,378.91
Net undistributed income
15,937.43
76,316.34
Past due property taxes
$35,347.52
Income taxes
2,255.14
Furniture, fixtures and equipment
3,939.46
Reorganization expense
8,181.72
Certificates bought
20,990.00
70,713.84
$ 5,602.50
Add withholding tax adjustment
11.07
Prior accumulations
$ 5,613.57
[Opinion] Section 23(1), Internal Revenue Code, provides that in computing net income there shall be allowed as a deduction a reasonable allowance for depreciation of property used in the trade or busines or held for the production of income. It further provides that: *374 "* * * In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each." The petitioner contends that the trust instrument, by conferring upon the trustee the power to manage the trust property and to improve, preserve, and protect it, with all the powers of an absolute owner, authorized the trustee to set aside as reasonable the full amount of depreciation sustained on the property each year. In the alternative, the petitioner contends that the trustee is, in any event, entitled to a deduction for depreciation proportionate to the undistributed income. Although in determining the deficiency herein the respondent disallowed any deduction for depreciation, he now concedes that the petitioner is entitled to a deduction of $5,676.47 of the depreciation of $3,683.44 sustained on the trust property during the taxable year, since the petitioner had discretion to withhold, and did withhold, $5,676.47 of the trust income of $7,931.97 in that year. *375 In the absence of any specific provision in the trust agreement for a deduction for depreciation, we must examine the pertinent provisions of the instrument to find a basis for an allocation in accordance with section 23(1). The purpose of the trust was to operate and preserve the property until such time as it could be sold advantageously. The trustee was given broad powers in the management of the property. It had power to withhold almost any amount of the current income to cover the cost of operating and maintaining the property. The bondholders held the beneficial interests as well as the remainder interests in the trust property. There was no trust purpose to be served either by increasing their current income at the expense of their capital or by preserving their capital at the expense of their current income. Under the broad powers conferred upon it the trustee could, and did, distribute annually all of the income not required for operating and maintaining the property. The broad discretion of petitioner, as trustee, either to withhold or to distribute trust income constituted a power to allocate the income. The word "allocable" in section 23(1) means "distributable". Fleming v. Commissioner, 121 Fed. (2d) 7, *376 affirming 43 B.T.A. 229; Newbury v. United States, 57 Fed. Supp. 168, certiorari denied, 323 U.S. 802. We conclude that the allowance for depreciation in the taxable year must be divided between the trustee and the bondholders on the basis of the amount of trust income distributed and the amount withheld, as now conceded by respondent. The fact that respondent allowed the depreciation deductions claimed by the trustee for previous years, except for certain adjustments which the trustee accepted, is immaterial. Respondent had a right, and a duty, to change his position whenever, in his judgment, the law required him to do so. Reynard Corporation, 30 B.T.A. 451; Shield Co., Inc., 2 T.C. 763. Decision will be entered under Rule 50. Footnotes
*. This amount claimed and reported by petitioner but not allowed by respondent.↩