**J. H. COOPER ENTERPRISES, Inc., and Joseph H. Cooper Estate, Transferee, Austin C. Keough, Executor, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 14944.

United States Court of Appeals
Eighth Circuit.

Sept. 13, 1954.

Richard A. Knudsen, Lincoln, Neb. (Arthur F. Driscoll, New York City, Maxwell V. Beghtol, John C. Mason, Kenneth E. Anderson and Roger V. Dickeson, Lincoln, Neb., with him on the brief), for petitioners.

Harry Marselli, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Meyer Rothwacks, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

The Tax Court held that J. H. Cooper Enterprises, Inc. was not entitled to a capital-loss deduction, made in its income-tax return for the fiscal year ended June 30, 1948, and that it was accordingly liable for a tax deficiency. The taxpayer has petitioned for review.[1]

The taxpayer had claimed the deduction, on the basis of stock owned by it in J. W. Cooper Corporation, representing an investment of $110,000, having become worthless during the tax year involved, and so being entitled to be charged off in its return for that period. The identifiable event, on which it predicated its right taxwise to demonstrate the worthlessness of the stock, was the adoption of a resolution by the board of directors of J. W. Cooper Corporation, in April, 1948, to liquidate and dissolve the corporation. The corporation had ceased carrying on its usual functions in 1946 and had thereafter engaged merely in preserving and attempting to sell its assets.

The Tax Court made a finding that the assets of J. W. Cooper Corporation had a value, over liabilities, on June 30, 1948, of $2,056.75, and that the stock of the corporation therefore "did not become worthless during the petitioner's fiscal year 1948." In arriving at this $2,056.75 margin of excess, in relation to the value of assets and the amount of liabilities which it found, the Tax Court had refused to recognize as a liability, on the part of the corporation, a charge of $2,500 in attorney's fees, set up on its records, for legal services claimed to have been rendered to it, up to that time, in litigation brought by a third party asserting title to an interest in some lands, of which the corporation was the record owner.

Thus, the Tax Court's determination that the stock of J. W. Cooper Corporation was not worthless, and that petitioner therefore could not make deduction on account of it, rested on the narrow basis of rejecting the $2,500 attorney-fee charge as a corporate obligation or liability. If the $2,500 was unwarrantedly rejected as a liability, then necessarily the finding that the corporation had assets on June 30, 1948, of $2,056.75 in excess of its liabilities, on which margin its stock could be regarded as not having been worthless, would automatically fall.[2]

The case has been submitted to us on the same narrow basis that it was considered and disposed of by the Tax Court—the question presented by peti-

---

1. The Estate of Joseph H. Cooper, deceased, and its Executor were also held to be liable for the deficiency, as transferee of the assets of J. H. Cooper Enterprises, Inc. They have appeared as formal parties, both in the Tax Court and here, admitting their liability as transferee, if any tax deficiency exists against J. H. Cooper Enterprises, Inc.

2. Petitioner, for purposes of this review, has accepted all the other items or details of the Tax Court's findings on asset values and liability amounts.

tioner being simply whether, on the evidence in the record, the Tax Court legally was warranted in making rejection of the $2,500 attorney-fee charge, as having been without any basis of obligation or liability on the part of the corporation.[3]

The evidence relating to the question is not as explicitly developed as it might have been—a not uncommon fault in many of the tax cases that come before us. The record shows, without dispute, that Joseph H. Cooper was, at the time of his death in 1946, the owner of all the shares of stock of J. H. Cooper Enterprises, Inc., the petitioner here, and also, as the Tax Court said, the owner directly or indirectly, of all the shares of stock of J. W. Cooper Corporation. It further undisputedly establishes that the principal asset of J. W. Cooper Corporation was a 76 per cent interest in 880 acres of land, near Millbrook, New York, to which the corporation held record title; that after administration was commenced of the estate of Joseph H. Cooper in 1946, his widow, who had been separated from him for many years, filed a petition in the Surrogate's Court of Duchess County, New York, where the administration was being had, to have it decreed that title to the real estate referred to, embracing J. W. Cooper Corporation's record interest, had become vested in her, under a provision of Joseph H. Cooper's will, devising to her any home in which they might be living at the time of his death; [4] that the widow had carried this litigation through the Surrogate's Court and the Appellate Division of the Second Department of the State of New York, with unsuccessful result, and had thereafter made application for leave to appeal to the New York Court of Appeals, which was denied; and that it was in relation to this litigation, up to and including the disposition made by the Appellate Division, that J. W. Cooper Corporation had set up an accrued liability against itself for $2,500 attorney's fees.

The Tax Court recognized in its opinion that the litigation had involved "title to the property;" that it had operated to prevent J. W. Cooper Corporation from making any market sale of the real estate and so carrying out the directed dissolution of the corporation, during its pendency; and that, after the litigation was ended, and the corporation's title thus was left standing clear, the corporation had been in a position to make, and had effected, market disposition of the land.

In rejecting the $2,500 attorney-fee charge as a corporate liability, however, the Tax Court, as we read its opinion, took the view that the litigation brought by the widow was merely against Joseph H. Cooper's estate; that, though J. W. Cooper Corporation was the legal titleholder of the property, the corporation had not been made a party to the suit nor been involved as such in any way; and that there thus was no basis for any attorney-fee obligation to have come to exist against the corporation out of the litigation. The opinion of the Tax Court said: "The record shows that the widow sued the estate. We do not see why the Cooper Corporation should be liable for the fee."

As has been indicated above, it is true that the record does not establish, with explicit legal formality, that J. W. Cooper Corporation was a defendant in the litigation. On this aspect, the taxpayer apparently took it for granted that it naturally would be assumed that the corporation, as record owner, constituted a necessary party, and would conventionally have been so joined, in any attempt by the widow or anyone else to claim title to the property through legal proceedings. And it does impress as being a bit legally unrealistic for the Tax Court nakedly to have made a contrary

3. The Tax Court rejected the attorney-fee charge as having been without any foundation or basis for a liability to exist, and so, of course, it did not reach the question of the reasonableness or unreasonableness of the amount itself.

4. The widow, in her suit, had also claimed title to various personal property, as constituting part of Joseph H. Cooper's estate.

inference here, especially so in the light of the recognition contained in its opinion, as previously stated, that the suit had been of such nature and effect as to have caused its pendency to prevent the corporation from being able to make any market sale of the land, and as to have caused its termination to clear the pathway for such a sale.

But if the Tax Court properly could refuse to be guided by these normal legal implications alone, as a basis for inferring that the corporation had been in fact a party to the litigation, and so protectively would need, and logically must have had, legal representation, either separate or joint, against the assertion of the widow's claim, we do not believe that, on any fair consideration and appraisal of such general probative indication as the evidence does actually, though informally, contain, it would be reasonably possible to find that the suit was not one against the corporation and that the corporation therefore was without need or basis for legal representation.

The narrative statement in the printed record, of the testimony of the attorney who defended the suit, shows that, in the course of his general testimony, he said that he represented the estate, the executor, "and others" in the litigation; that "a minimum charge of $2,500 should have been allocated to the corporation for its fair proportion of the expense in defending against the claim instituted by Mrs. Cooper;" and that "This is based upon services rendered by (him) for the corporation in handling these matters."

Similarly, the narrative summary of the testimony of the bookkeeper of the corporation, who was also one of its officers, showed that the $2,500 fee had been set up by him as a liability of the corporation, on the basis of its constitut-

ing "the amount accrued on that date for services to the corporation in the lawsuit commenced by Mrs. Cooper."

And further—though obviously more remote—some minutes of the board of directors of the corporation appearing in the record, in relation to a sale of some personal property of the corporation authorized while the litigation in question was pending, contain a general reference to the attorney, whose testimony has been set out, and to his law firm, as "the New York legal representatives of this Corporation."

On the implication of all of these elements together, and without there being anything in the evidence to carry the load of a substantial contrary implication, it seems to us that the Tax Court's holding, that the corporation was not a party to the litigation, and that there thus was no basis for any obligation or liability to exist on its part for legal services in the suit, cannot be said to rest on rational ground and so ought not to be permitted to stand.[5]

It is true that the record does indicate that, after the termination of the litigation, the estate paid the entire attorney's fee charged for the defense of the widow's suit, including the portion that is here involved. But in the corporation's then state of liquidation, and in the beneficiary relationship existing between the estate and the corporation as to that liquidation, we do not think that this bare fact of payment could be called one of substantial probative implication or indication, against the evidentiary matters and elements which have been set out above, as a basis on which to conclude that the corporation had not been a party to the litigation and that it therefore had not had any need, basis, benefit or obligation of legal services in the suit.

It is clear from the evidence that any attorney's fee the corporation might

---

5. Petitioner has attached certified copies of records from the Surrogate's Court in the printed record, establishing that the corporation was in fact a party to the widow's suit and had legal representation therein, with such appearance on behalf of the corporation being formally shown of record. But these records were not before the Tax Court, nor were their contents requested to be otherwise noticed by that court, so that petitioner is not entitled to ask that they be accorded notice or probative effect on this review.

owe would have had to await payment from the liquidation of its assets, which the suit had halted. The estate had previously made some advances or loans to the corporation, by virtue of its stockholder and beneficiary relationship. And in its ultimate practical effect to the estate, it would seem that it would be as broad as it was long, whether payment of any attorney's fee owed by J. W. Cooper Corporation in the widow's litigation was allowed to wait until the corporation had sold its land, or whether the estate, as a matter of administrative expedition, on termination of the litigation, saw fit to clean up the attorney's fee, equivalently as an advance, and await restoration from liquidation and distribution of the various Cooper corporations involved in the estate. We do not mean to draw any inferences ourselves from these circumstances, but merely point them out as matters of possible probative relationship, had the Tax Court undertaken to consider the indicative elements of the situation, previously referred to, which the record contained.

It ought perhaps to be added that the Tax Court did not in fact treat the manner of the payment of the fee as a matter of controlling significance on the question it decided, for it merely said that the payment by the estate lent support to or "sustained" the conclusion which it had reached—that conclusion being, as previously indicated, that the corporation had not been a party to the litigation and that there thus had been no need or basis for it to have employed counsel or to view it as having so done.

The general legal principles applicable to the situation are not in controversy. Losses from the worthlessness of stocks are deductible "for the taxable year in which the stock became worthless, provided a satisfactory showing of its worthlessness is made." Treasury Regulations 111, § 29.23(e)–4. In general, the worthlessness of stock cannot be properly demonstrated for tax purposes, except in the focus of some identifiable event, as a basis for enabling the time of the actual loss to have become realistically fixed. Nelson v. United States, 8 Cir., 131 F.2d 301. A decision to dissolve or liquidate, when a corporation is in fact insolvent, may be sufficient as such an identifiable event, to entitle or to require a taxpayer to claim and establish the worthlessness of the stock during that taxable year. Gowen v. Commissioner, 6 Cir., 65 F.2d 923; Royal Packing Co. v. Commissioner, 9 Cir., 22 F.2d 536; Thompson v. Commissioner, 2 Cir., 115 F.2d 661. Whether or not stock actually has become worthless in a particular year, as a matter of insolvency and focusive identifiable event, is controllingly a question of fact for the Tax Court's determination and, where its conclusion cannot be said to be an unreasonable one, on the elements on which it is made to rest, in relation to the evidence as a whole, that conclusion, as a finding of fact, is not entitled to be disturbed upon review. Boehm v. Commissioner. 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78. But if the finding has been predicated upon inferences which are without any substantial probative basis, and which ignore such contrary indicative probative elements as the record does contain, without any evaluation of them, then obviously the finding is not required to be accepted as one of rational legal basis or content.

Here, as we have said, the Tax Court's view that the suit was against the estate alone, and that there thus existed no need or basis for the corporation to have legal representation, as a ground for recognizing any obligation or liability on its part for attorney's fees, does not seem to us to have a rational basis as a matter of any natural implication on the general situation involved, or as a matter of probative content, against the indicative elements, which the record informally contained, and which the Tax Court did not purport to have evaluated, but which it simply ignored.

We do not reach any other question than the single one discussed. The Government has argued factual matters in relation to other questions not dealt with by the Tax Court, as a basis for

seeking to uphold the Tax Court's decision, but it is beyond our province to deal with any questions of fact not resolved by the Tax Court, or to make any subsidiary or ultimate findings with respect to them. We can only test such findings and conclusions as the Tax Court has made.

The decision of the Tax Court is reversed, and the cause is remanded to it for such further proceedings as it may deem appropriate, not inconsistent with this opinion.