ANGELO and NANCY ESPOSITO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ESPOSITO v. COMMISSIONER
Docket No. 5038-71
United States Tax Court
T.C. Memo 1973-196; 1973 Tax Ct. Memo LEXIS 91; 32 T.C.M. (CCH) 910; T.C.M. (RIA) 73196; September 6, 1973, Filed Walter J. Lynwood, for the petitioners. James D. Thomas, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency 1967
$1,132.56
1968
1,402.38
TOTAL
$2,534.94
*92 These deficiencies arose in part from respondent's disallowance of a $237,000 capital loss claimed on petitioners' 1967 joint return, $1,000 of which petitioners deducted in 1967, and another $1,000 of which petitioners deducted as a 2 capital loss carryover in 1968. [1]
The issues to be decided are: 1. Have petitioners substantiated that they are entitled to a capital loss deduction in 1967 and 1968 as a result of petitioner Angelo Esposito's investment in his wholly-owned corporation becoming worthless? 2. Have petitioners substantiated that petitioner Angelo Esposito made nonbusiness loans to his wholly-owned corporation which became worthless? FINDINGS OF FACT Petitioners, husband and wife, resided in Oak Park, Illinois, when they filed their petition. Petitioner, Nancy Esposito, timely filed a separate Federal income tax return for 1967. Subsequent to her filing a separate return, petitioners filed an amended joint Federal *93 income tax return for 1967. Petitioners timely filed a joint Federal income tax return for 1968. Nancy Esposito is a party to this proceeding solely because joint returns were filed in 1967 and 1968, and hereinafter "petitioner" will refer to Angelo Esposito. Prior to 1951, petitioner worked for his father in his father's garage and gasoline station as a service station attendant. In 1951 petitioner, Alfred Dell'Armi and Dante 3 Dell'Armi formed an Illinois corporation known as Dell'Armi & Sons, Inc. At that time, petitioner knew nothing about the construction business. In contrast, the two Dell'Armis were experienced carpenters and had been in the contracting business for some time. At the time the corporation was formed, the two Dell'Armis contributed a Hudson truck valued at approximately $750, some unidentified tools, and their goodwill, and petitioner contributed an unknown amount of cash. Petitioner and the two Dell'Armis each became one-third owners of Dell'Armi & Sons, Inc., each shareholder receiving 100 shares of common stock. From its inception the corporation was in the business of developing real estate. In 1953 the corporation's name was changed to Dell'Armi *94 and Esposito, Inc. In December 1955 petitioner and the Dell'Armis had a mutual falling out and petitioner agreed to acquire their shares. Petitioner acquired the Dell'Armis' shares in 1956, for a consideration which is unknown, and the corporation became known as Esposito and Company. The corporation continued to carry on the same business. In 1960, the current liabilities of Esposito and Company exceeded its current assets. On March 3, 1960, the creditors of the corporation filed a petition in the United States District Court for the Northern District of Illinois, wherein they asked that the corporation be reorganized pursuant 4 to the provisions of Chapter X of the Bankruptcy Act. On March 24, 1960, the District Court entered an order approving the creditors' petition and appointing John E. Sullivan as Trustee of the Estate of Esposito and Company. At this time, the trustee assumed responsibility for the management and preservation of the corporation's real property and assets. An amended plan for reorganization was filed on January 11, 1963, calling for the sale of "all of the remaining tangible assets of the Debtor corporation in order that said assets may be reduced *95 to cash and the proceeds distributed to creditors and parties in interest * * *." Petitioner did not file a claim against Esposito and Company in the proceedings for reorganization. In accordance with this judicial proceeding, Alvin M. Seavey, a partner in a C.P.A. firm, audited the corporate records of Esposito and Company. His report, dated February 8, 1962, was a summary of Esposito and Company's corporate activities and was used in the proceedings for reorganization of the corporation. On June 14, 1963, Esposito and Company was adjudged bankrupt, the reorganization proceeding was terminated, and proceedings in bankruptcy were instituted. Again, petitioner did not file a claim against Esposito and Company in the bankruptcy proceedings. On their 1967 and 1968 joint returns, petitioners deducted 5 $1,000 as a capital loss in 1967 and $1,000 as a capital loss carryover in 1968 due to a claimed 1967 capital loss in the total amount of $237,000 arising out of petitioner's investment in and loans to Esposito and Company. Respondent disallowed these deductions, stating that petitioner had failed to establish any such capital loss. OPINION 1. Investment in Esposito and *96 Company Petitioner contends that since the corporation's inception in 1951, he has paid a total of $110,000 for his 300 shares of issued and outstanding common stock of Esposito and Company. Petitioner asserts that at the time of incorporation he contributed $10,000 in cash for the 100 shares he initially received in the corporation, and that in 1956, when he bought out the other two shareholders, he paid them $100,000 for their 200 shares. Furthermore, petitioner contends that these 300 shares became worthless in 1967, and he thereby became entitled to a $110,000 deduction for worthless securities pursuant to section 165(g). [2] In contrast, respondent 6 contends that petitioner has failed to substantiate that any such capital loss was sustained, and, if it were, that it was sustained in 1967. We conclude that petitioner has failed to prove that his stock in Esposito and Company became worthless in 1967, and for the reasons stated hereafter do not find it necessary to reach the issue of the amount of his loss, if any. *97 To be entitled to a section 165(g) deduction petitioner must prove the year in which his Esposito and Company stock became worthless. The cases are consistent in holding that a taxpayer must establish the year in which his stock became worthless by reasonably convincing evidence of an identifiable event fixing that year. J. H. Cooper Enterprises v. Commissioner, 215 F.2d 723 (C.A. 8, 1954) reversing a Memorandum Opinion of this Court; Sterling Morton, 38 B.T.A. 1270 (1938), affirmed 112 F.2d 320 (C.A. 7, 1940); John H. Watson, Jr., 38 B.T.A. 1026 (1938). The question of whether property becomes worthless during a particular year is one of fact. Joseph C. Lincoln, 24 T.C. 669, 694 (1955), affirmed per curiam 242 F.2d 748 (C.A. 6, 1957); John B. Marsh, 38 B.T.A. 878, 902 (1938). More than taxpayer's subjective belief 7 of time of worthlessness is required. Boehm v. Commissioner, 326 U.S. 287, 293 (1945); Robert W. Aagaard, 56 T.C. 191, 209 (1971); James G. Hoover, 32 T.C. 618, 630 (1959). *98 Petitioner testified that he felt 1967 was the year that the securities became worthless because until that time he felt there was some chance of his corporation recovering. This was petitioner's only offer of proof on this subject. However, in 1960 Esposito and Company could not meet its current liabilities from its current assets. On March 3, 1960, creditors of Esposito and Company filed in the United States District Court for the Northern District of Illinois asking that the corporation be reorganized. On March 24, 1960, the creditors' petition was granted and a trustee was appointed. Active construction operations of the company were halted at that time. On June 14, 1963, Esposito and Company was adjudicated a bankrupt.
Worthlessness may be ascertained "by the happening of certain events such as bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it." Sterling Morton, supra at 1278. More than petitioner's subjective belief that 1967 was the year of worthlessness must be shown in order to prove that the *99 events from 1960 through 1963 did not fix the time of worthlessness. See Boehm v. Commissioner, supra.We hold that petitioner has not met his burden of proving 1967 was the 8 year in which is stock became worthless. in our view petitioner's Esposito and Company stock became worthless not later than 1963. A capital loss incurred prior to 1964 may be carried forward for five years as a short-term capital loss, but only to the extent not allowed as a deduction in any intervening years between the year in which the net capital loss was sustained and the year to which carried. [3] However, petitioners have introduced no evidence concerning their intervening years. Were we to determine the precise year of the loss and the amount of the loss, we still could not allow any amount thereof as a capital loss carryover in view of the absence of this essential evidence. Petitioner contended not only that 1967 was the year the stock became worthless, but that the amount of his loss was $110,000. Respondent *100 asserted that petitioner (a) failed to prove the amount of his loss, and (b) recovered any investment he had in the company by withdrawing from it $556,024 prior to the date the trustee was appointed by the District Court. In view of our holding above, we do not deem it necessary to reach these contentions. 2. Nonbusiness debts Petitioner contends that over the years he loaned Esposito and Company $127,000, that such loans were personal loans, and 9 that they became worthless in 1967. Consequently, petitioner claims he incurred a capital loss in 1967 pursuant to section 166(d). [4] Respondent contends that petitioner has failed to substantiate that any such capital loss was sustained, and we agree. No controversy appears to exist as to the nonbusiness nature of the alleged debt. *101 To be entitled to a nonbusiness bad debt deduction, petitioner must prove that he actually loaned money to the corporation, the amount of such loans, and the year the debt became worthless. (a) Existence of debt. Petitioner alleges that he personally borrowed money from various people and then loaned this money to the corporation. Petitioner produced neither corroborating witnesses nor definitive documentary evidence of this fact. The only evidence presented was his own self-serving testimony which is vague, inconclusive and incomplete. We are not obligated to accept such testimony even if uncontradicted. 10 Carmack v. Commissioner, 183 F.2d 1, 2 (C.A. 5, 1950) affirming a Memorandum Opinion of this Court, certiorari denied 340 U.S. 875 (1950); Arcade Realty Co., 35 T.C. 256 265 (1960); Frank Imburgia, 22 T.C. 1002, 1018 (1954). Moreover, Alvin M. Seavey, the certified public accountant who audited and examined Esposito and Company during the reorganization proceedings in 1960 through 1963, testified that according to his examination *102 the various people petitioner claimed he borrowed from made loans directly to the corporation and not through petitioner. We hold that petitioner himself did not loan any money to the corporation. (b) Amount of the loss. Assuming petitioner did loan money to the corporation, petitioner still has the burden of proving the amount of that loan. Again the bulk of petitioner's evidence is how own self-serving testimony. No corroborating witness or credible evidence has been presented. Again, this Court is not required to accept petitioner's vague, 11 inconclusive and incomplete testimony. Carmack v. Commissioner, supra; Arcade Realty Co., supra; Frank Imburgia, supra. Consequently, we hold that petitioner has failed to establish the amount of his alleged loan. (c) Year of worthlessness. Assuming petitioner established that he did loan money to the corporation and the amount of that loan, he has the additional burden of proving 1967 as the year the debt became worthless. Herbert W. Dustin, 53 T.C. 491, 501 (1969), affirmed *103 467 F.2d 47 (C.A. 9, 1972); Earl V. Perry, 22 T.C. 968, 973 (1954). Again petitioner bases his contention that 1967 was the year of worthlessness merely on the fact that 1967 was the year in which he gave up hope for recovery of the corporation. Considering all the pertinent facts (i.e., the inability of the corporation to meet current liabilities from current assets, the proceeding for reorganization in 1960, the adjudication of bankruptcy in 1963), we find that if there were a bona fide debt, it became worthless prior to 1967. For all the above reasons, we hold that petitioner has failed to substantiate that he is entitled to a nonbusiness bad debt deduction. Decision will be entered under Rule 50. Footnotes
1. Petitioners expressly conceded a disallowed loss on the sale of certain rental property. Petitioners introduced no evidence with respect to a disallowed interest expense, and consequently that item is deemed conceded by petitioners. ↩
2. All Code references are to the Internal Revenue Code of 1954, as in effect during the years in issue. Section 165(g) provides: (g) Worthless Securities. - (1) General Rule. - If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security Defined. - For purposes of this subsection, the term "security" means - (A) a share of stock in a corporation; ↩
3. Section 1212(b) (2) prior to its amendment by the Tax Reform Act of 1969. ↩
4. Section 166(d) provides: (d) Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness Debt Defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩