## THE HARRINGTON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6680. Promulgated April 16, 1946.

*William J. Duiker, Esq.*, for the petitioner.
*William H. Best, Esq.*, for the respondent.

## OPINION.

HILL, *Judge*: We are first called upon to consider whether respondent correctly disallowed $12,000 of the amount which petitioner deducted as compensation of officers from its gross income for 1940 and $17,750 of a similar deduction from the 1941 income. Section 23 (a) (1) (A) of the Internal Revenue Code authorizes the deduction of reasonable allowances "paid or incurred" as compensation to corporation officers for services actually rendered. Allowance of the claimed deductions must be based upon facts sufficient to bring them within this provision. The burden of proving these facts is upon

petitioner. *Shield Co.*, 2 T. C. 763. The respondent does not object to the claimed deductions on the ground of unreasonableness or on the ground that the services for which they were to compensate were not actually rendered. Since petitioner computed its tax liability on the accrual basis, the ultimate issue is therefore whether the salaries in controversy were expenses "incurred" by petitioner within the respective calendar years.

The petitioner contends that its liability for the full salaries voted was incurred and accrued during the taxable year for which voted, and that the offset of salaries against the donated promissory notes was a cancellation by creditors of fixed liabilities to each other and not a corporate readjustment of salaries or a waiver of part of the salaries by the corporation officers. Respondent argues that the salaries were not expenses incurred and accruable to the extent that they were set off against the notes. We agree with respondent.

Expenses are not incurred unless there has arisen an unconditional legal obligation to pay them and they do not accrue within a given taxable year unless all of the events which determine the liability of the taxpayer to pay occur within that year. *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, 519; *Bauer Bros.* v. *Commissioner*, 46 Fed. (2d) 874, 875; certiorari denied, 283 U. S. 850. We have recognized many times that a readjustment during the year of the amounts of salaries is not unusual in corporation procedure and we have repeatedly held that "the amounts incurred are those finally agreed upon during the year." *Albert W. Russell*, 35 B. T. A. 602, 603, and cases there cited.

In considering whether the petitioner has met the burden of proof on this issue, we think a close scrutiny of the entire transaction is justified by the fact that the additional compensation was voted by the officers to receive it without any apparent consultation with the other officers or stockholders. Bookkeeping entries can not take the place of nor create expenses incurred, *Stern-Slegman Prins Co.* v. *Commissioner*, 79 Fed. (2d) 289, 291, and yet it is only by reliance upon petitioner's books that we can determine in this case the amounts of the 1941 additional compensation, the dates of all the notes involved, and the amounts of the 1941 notes. The dates on which the additional compensation for both 1940 and 1941 was voted are not revealed in the testimony, shown in the exhibits, or contained in either of the stipulations. The sole witness, A. M. Harrington, one of the two directors known for certain to have been present at the meetings, could not recall the specific meetings at which the extra salaries were authorized, although he remembered that additional compensation had been agreed upon. Harrington variously estimated the date of the 1940 meeting as "during the early part of 1940" and

"when the cash position [of the company] began to improve." The testimony does not disclose even a guess as to the date of the 1941 meeting. Apparently the only written indication of action taken at these informal meetings is that found among the December closing entries on petitioner's journal. Cf. *Troy Motor Sales Co.*, 14 B. T. A. 546, 556. Harrington did not recall when the promissory notes were given and, according to his testimony, had unwittingly destroyed the canceled notes during the summer of 1945 while this proceeding was pending.

We have found that by procedure established in 1937 the promissory note contributions to the corporation were made only when additional salaries were to be or had been voted to the contributing officers for the year in which the notes were given, and we have found that the purpose of the contributions was to avoid the excessive depletion of corporation cash by payment of the salaries. In view of these findings it is clear that, even if the additional salaries were voted prior to the donation of the notes, the vote was taken with the understanding of the benefiting officers and the voting directors that personal promissory notes of the officers would be made and delivered to the corporation before the end of the year in such amounts that the bookkeeping offset would leave due to each officer only the amount of the salary which conveniently could be paid by the company. It seems obvious, therefore, that if any corporation liability for additional compensation was created by the vote of the two directors, it was contingent and thus nonaccruable. *Ames Reliable Products Co.*, 44 B. T. A. 176; *Empire Sprinkler Co.*, 18 B. T. A. 1126; *Verndale Garage, Inc.*, 15 B. T. A. 57. The extent of the liability and not merely the date of payment remained to be determined. *Commissioner* v. *Brooklyn Radio Service Corporation*, 79 Fed. (2d) 833, reversing 31 B. T. A. 269. The fixed corporate liability for salaries of its officers for the years in question arose only when it was determined what the corporation conveniently could pay and the notes were given for the difference between these amounts and the salaries voted. See *Schoellkopf Aniline & Chemical Works, Inc.* v. *United States*, 3 Fed. Supp. 417, 421. The conveniently payable amounts were allowed by respondent as deductions for salaries accrued.

It follows from the foregoing remarks that the full amounts voted, though credited on the books as closing entries for the taxable years, were not at any time available to the officers, and were not constructively received by them. *McDuff Turner*, 5 T. C. 1261. Cf. *Michael Flynn Mfg. Co.*, 3 T. C. 932. Petitioner points out that in their individual income tax returns the officers included in their gross incomes the total salaries voted. Whether they paid the correct amount of tax due upon their individual incomes does not affect the tax liability of the corporation, though their apparent belief that they had received the full amounts voted might throw some light upon a less vivid pat-

tern of facts than we have here. Cf. *Willkie* v. *Commissioner*, 127 Fed. (2d) 953.

In the brief, respondent relies upon *Stern-Slegman Prins Co.* v. *Commissioner*, *supra*, where it was held that deductions for salaries paid or incurred are limited by a downward adjustment of the authorized compensation during the taxable year. Petitioner attempts to distinguish that case and cites in support of the allowance of the claimed deductions *Lamm Lumber Co.*, 45 B. T. A. 1; *Boger & Crawford, Inc.*, 13 B. T. A. 835, and numerous memorandum opinions. Since we hold that the petitioner's liability for the full salaries voted never accrued, it is unnecessary to consider whether it was adjusted downward. For the same reason we pass over petitioner's contention that the claimed deductions would have been allowable had there been an exchange of cash between officer and corporation rather than the purported exchange of liabilities. But see *Royal Mfg. Co.* v. *Commissioner*, 139 Fed. (2d) 958; *Albert W. Russell*, 35 B. T. A. 602. The authorities cited by petitioner suggest no cure for the defect which we find in its case.

We conclude and hold that the amounts in controversy were not expenses incurred by the corporation within section 23 (a) (1) (A) of the Internal Revenue Code.

The second issue is whether petitioner is liable for penalties for delinquency in filing an income and declared value excess profits tax return for 1941 and an excess profits tax return for 1941. We have found, and it is not contended otherwise, that petitioner did not file such returns as are required by law within the time required by law,[1] and did not request or receive an extension of time for the filing of

---

[1] SEC. 52. CORPORATION RETURNS.

(a) REQUIREMENT.—Every corporation subject to taxation under this chapter shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe. * * *

\* \* \* \* \* \* \*

SEC. 53. TIME AND PLACE FOR FILING.

(a) TIME FOR FILING—

(1) GENERAL RULE.—Returns made on the basis of the calendar year shall be made on or before the 15th day of March following the close of the calendar year. Returns made on the basis of a fiscal year shall be made on or before the 15th day of the third month following the close of the fiscal year.

(2) EXTENSION OF TIME.—The Commissioner may grant a reasonable extension of time for filing returns, under such rules and regulations as he shall prescribe with the approval of the Secretary. Except in the case of taxpayers who are abroad, no such extension shall be for more than six months.

\* \* \* \* \* \* \*

SEC. 729. LAWS APPLICABLE.

(a) GENERAL RULE.—All provisions of law (including penalties) applicable in respect of the taxes imposed by Chapter 1, shall, insofar as not inconsistent with this subchapter, be applicable in respect of the tax imposed by this subchapter. [Ch. 25 subch. E, excess profits tax.]

those returns. *Nicholas Roerich*, 38 B. T. A. 567, 583; affd., on other issues, 115 Fed. (2d) 39; certiorari denied, 312 U. S. 700; *National Contracting Co.*, 37 B. T. A. 689; affd., 105 Fed. (2d) 488.

As we understand it, petitioner's contention is (1) that each skeleton tentative return form which it filed substantially complied with Treasury Department Mimeograph 3361, which first established conditions to the grant of extensions of time, and that each form, therefore, should have been considered by the collector to be a request for extension, and (2) that the filing of tentative returns, with a statement of reasons therefor and notice that amended returns would be filed later, "eliminates completely the implication" of willful neglect against which the penalty provision of the code is directed. Petitioner apparently feels that for either of these reasons the penalties asserted by the respondent are not supported by section 291 of the Internal Revenue Code.[2] We can not agree as to either contention.

Section 53 (a) (2) of the Internal Revenue Code provides as a relief measure that "the Commissioner may grant a reasonable extension of time for filing returns, under such rules and regulations as he shall prescribe with the approval of the Secretary." This authority is delegated by section 19.53-2 of Regulations 103 (1940) to the various collectors of internal revenue, and applications for extension of time are directed to be addressed to the collector for the taxpayer's district and to contain "a full recital of the causes for delay." By Mimeograph 3361, IV-2 C. B. 69, dated November 20, 1925, the Commissioner of Internal Revenue authorized collectors to grant extensions according to certain rules which were there stated. The second of these is:

2. The application for the extension must state specifically the reason for requesting that the time for filing the return be extended. The extension should be granted only if explanation given is satisfactory to the collector. In this connection, it is not believed that the illness or absence of a particular officer of a corporation or of a member of a partnership constitutes in itself a sufficient reason for granting the corporation or partnership an extension of time within which to file its return.

To provide uniformity and to aid collectors, the Commissioner promulgated on April 16, 1937, by Mimeograph 4584, 1937-1 C. B. 97, Form 1134, with instructions, entitled "Application for Extension of Time for Filing Income and Excess-Profits Tax Returns." Prior to and since 1937 numerous Treasury Department decisions and rulings on the subject have been issued. Mim. 3759, VIII-2 C. B. 123; Mim. 3789, IX-1 C. B. 126; I. T. 3451, 1941-1 C. B. 285; Mim. 5204, 1941-1

---

[2] SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax : 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *

C. B. 286; Mim. 5213, 1941–2 C. B. 110; I. T. 3529, 1942–1 C. B. 96. The last two mimeographs made clear that extensions of time would be granted to corporations only after a careful examination of the merits of the case. The 1942 office decision included an announcement that, due to the Nation's urgent need for revenue to finance its war effort, the Bureau of Internal Revenue policy would be to grant extensions of time for filing returns for the calendar year 1941 "only in those cases where * * * most unusual and meritorious circumstances * * * justify the extension requested." Applications by corporations which appeared to the collector to warrant favorable action were to be forwarded to Washington and granted only by the Commissioner. We find no room for criticism of the announced policy to be followed in the exercise of the discretion conferred upon the Commissioner by section 53 (a) (2) of the code, and we know of no reason to conclude that meritorious requests for extensions have not been favorably and expeditiously acted upon by the administrative officials.

In the light of this declared policy, we do not think that it fairly can be said that petitioner merely erred in failing to use the proper form for requesting extensions of time. We hesitate to assume, as petitioner suggests, that if the information advanced on the return forms had been presented on Form 1134 the Commissioner would have granted a postponement. Nor do we agree that the respondent was remiss or arbitrary in failing to interpret the forms which petitioner filed as requests for extensions of time and in failing to advise petitioner to amplify the stated reasons for delay. The notation of the petitioner that, "Due to sickness and/or the exigencies of the National Emergency the detailed figures will be included in amended returns," suggests that any arbitrary action was on its part in granting itself an extension of unspecified duration. Not only did petitioner fail to use the form designed to bring this seasonable matter to the administrative attention, but it did not purport to request an extension of time and obviously did not consider that it had made such a request. It appears doubtful, moreover, that the reasons for delay were stated in sufficient detail, or, if fully stated, would have been of sufficient merit to justify the grant of a period of grace. The administration of the tax laws would be obstructed and the penalties provided by Congress to assure compliance with them would lose their effectiveness if a taxpayer by resort to the casual gesture which petitioner here employed could shift the burden which the law places upon him onto the Commissioner of Internal Revenue. We do not think that section 53 (a) (2) of the code requires or contemplates that the Commissioner shall to that extent shepherd the taxpayer in his compliance with the law. We conclude, therefore, that petitioner's first conten-

730

tion as to the penalty issue is disposed of by the finding that no request for extension of time was made or granted.

As to petitioner's second contention, it is only necessary to observe that the burden is upon petitioner to show the reasonable cause which takes his delinquency out of the realm of willful neglect. *Economy Savings & Loan Co.*, 5 T. C. 543, 552; *Burford Oil Co.*, 4 T. C. 613, 618. Indications of the absence of fraud or criminal conduct do not avoid the conclusion that willful negligence as used in section 291 of the Internal Revenue Code was the reason for the delinquency. *Plunkett v. Commissioner*, 118 Fed. (2d) 644, 650. If it was not and the taxpayer contends that the tardiness was excusable, a prerequisite to relief on that ground is that the actual cause of the delay be established in the record of the proceeding. In this case petitioner has neither alleged it in the pleadings nor proved it at the hearing.

*Decision will be entered for respondent.*