*Decision will be entered under Rule 50.*

ARCADE REALTY COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68160. Filed November 10, 1960.

*Vincent L. Kilborn, Esq.*, and *Abraham A. Mitchell, Esq.*, for the petitioner.

*Homer F. Benson, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined deficiencies in income tax and additions to the tax under section 291(a) of the 1939 Code[1] as follows:

| Year | Income tax | Addition to tax, sec. 291(a) |
| --- | --- | --- |
| 1951 | $2,808.85 | $702.21 |
| 1952 | 1,986.19 | 297.93 |
| | 4,795.04 | 1,000.14 |

At the trial petitioner conceded issues raised in its petition relating to: (1) Management and collection expenses claimed for the years 1951 and 1952; (2) additional depreciation claimed on rental property for the years 1951 and 1952; and (3) additional repair expenses claimed for the year 1952.

The remaining issues presented are: (1) Whether interest paid by petitioner on certain mortgage loans in the aggregate amounts of $4,080.05 and $3,219.26 in the years 1951 and 1952, respectively, is deductible under section 23(b); (2) whether petitioner sustained an embezzlement loss in 1951 in the amount of $20,248.30 within the meaning of section 23(f); and (3) whether petitioner's failure to file timely Federal corporate income tax returns for the taxable years 1951 and 1952 was due to reasonable cause under section 291(a).

FINDINGS OF FACT.

I. *Interest Deductions.*

Arcade Realty Company, Inc., hereinafter sometimes called petitioner or Arcade, is a corporation organized under the laws of the

[1] All sections noted herein refer to the 1939 Code.

State of Illinois to own and lease real estate. All of the outstanding capital stock was owned equally by Joseph Mitchell and his wife until her death in December of 1950. Thereafter, during the taxable years 1951 and 1952, the stock was owned equally by Mitchell and the estate of his deceased wife. The officers and directors of said corporation during the taxable years involved herein were Vernon F. Neubauer, president, Charles E. Poenack, vice president, and Eleanor Gaus, secretary-treasurer.

During the taxable years 1951 and 1952, petitioner derived its income primarily from rentals of real estate. Petitioner owned a downtown office building, referred to as the Arcade Building, and rented office space therein. The building was located at 113–121 Collinsville Avenue and 112–118 Main Street, East St. Louis, Illinois, but its business office was in the Paul Brown Building in St. Louis, Missouri.

The Jefferson Loan Company (hereinafter sometimes called Jefferson) was a corporation engaged in making mortgage and commercial loans, discounting commercial paper, and lending money. Its principal place of business was located in the Paul Brown Building, St. Louis, Missouri. The businesses of Jefferson and Arcade were conducted in the same offices in said building and they each had the same individuals as corporate officers.

The outstanding capital stock of Jefferson was likewise owned equally by Joseph Mitchell and his wife prior to her death. During 1951 and 1952, it was owned equally by Mitchell and the estate of his wife.

In 1950, Joseph Mitchell was sentenced to the penitentiary for income tax evasion and began serving his sentence about October of that year. During the taxable period involved herein, i.e., 1951 and 1952, Mitchell was incarcerated in the Federal penitentiary at Tallahassee, Florida. While he was imprisoned, the affairs of Arcade and Jefferson were entrusted to Neubauer.

William A. Lubel (real estate broker and general manager of a mortgage company) was employed by Mitchell in 1948. Lubel was responsible for the management of Mitchell's affairs while he was in the penitentiary with respect to certain business transactions in Mobile, Alabama.

On January 18, 1950, petitioner mortgaged the Arcade office building, its principal property, to Jefferson for $53,305. Jefferson sold and assigned this mortgage to the Glick Realty Company, who in turn assigned its interest in said mortgage to Kaiser Bros., Inc. Thereafter, in February 1953, the mortgage was assigned to William A. Lubel.

In January 1951, petitioner obtained a loan (No. 6012) from Jefferson in the amount of $15,559 secured by a second mortgage on the

Arcade Building. The second mortgage loan was subsequently assigned by Jefferson.

In July 1951, petitioner obtained another loan (No. 6226) from Jefferson referred to as the third mortgage loan, in the amount of $15,663.29 secured by a third mortgage on the Arcade Building.

Part of the interest in question was paid to Jefferson Loan Co., part to Glick Realty Co. and part to Kaiser Bros., Inc. See *infra* for the amounts of interest paid to each.

Neither Glick Realty Company nor Kaiser Bros., Inc., assignees of part of the loans, were or are in any way related to the petitioner, its then stockholders, or to Jefferson.

Funds in the form of checks received by Arcade from Jefferson in connection with the third mortgage loan were deposited to petitioner's account.

The entry on Jefferson's books for the third mortgage loan (No. 6226) was as follows:

| | | |
|---|---|---|
| Loans receivable—Arcade Realty | $15,663.29 | |
| Cash advances—Arcade Realty | | $13,620.25 |
| Loan—interest | | 2,043.04 |
| | | 15,663.29 |

The reciprocal entry on Arcade's books reflects the following items:

| | | |
|---|---|---|
| Account receivable: | | |
| Joseph Mitchell's account | $17,170.25 | |
| Prepaid interest | 1,759.25 | |
| Interest expense | 283.79 | |
| Jefferson Loan Company accounts payable | | $3,550.00 |
| Third mortgage payable, Jefferson Loan Company | | 15,663.29 |

For each of the taxable years 1951 and 1952, petitioner claimed on its returns as deductions interest paid on the aforesaid mortgage loans.

Interest items, disallowed by respondent as personal expenses paid on behalf of Mitchell, were disbursed by Arcade as follows:

*1951*

| | |
|---|---|
| Glick Real Estate Company (2d mortgage) | $2,252.70 |
| Jefferson Loan Company (2d mortgage) | 1,543.56 |
| Jefferson Loan Company (3d mortgage) | 283.79 |
| Total | 4,080.05 |

*1952*

| | |
|---|---|
| Glick Real Estate Company (2d mortgage) | $516.31 |
| Kaiser Bros. (2d mortgage) | 1,102.64 |
| Jefferson Loan Company (2d mortgage) | 1,600.31 |
| Total | 3,219.26 |

## II. *Alleged Embezzlement Loss.*

In the early part of 1952 a certified public accountant (John F. Bruen, Jr.), employed by an accounting firm which had been retained by Lubel, made a partial audit of Arcade's books and records. The accountant did not examine all checks and records for the taxable years 1951 and 1952. His firm made only a general review of the records relating to petitioner's transactions with Jefferson.

During 1951, petitioner's bank statements and checks reflect the following withdrawals:

| Date 1951 | Amount | Payee | Endorser |
|---|---|---|---|
| May 14 | $4, 677. 11 | Charles E. Poenack | Charles E. Poenack |
| May 22 | 5, 310. 50 | Vernon F. Neubauer | Vernon F. Neubauer |
| June 18 | 5, 000. 00 | Vernon F. Neubauer | Vernon F. Neubauer |
| June 30 | 5, 259. 75 | Vernon F. Neubauer | Vernon F. Neubauer |
| Total | 20, 247. 36 | | |

Each of said checks was drawn and signed by Gaus, secretary-treasurer of Arcade who was authorized to draw checks for the petitioner.

Petitioner's books show the respective amounts of $10,259.75 and $6,910.50, or a total of $17,170.25, charged to Mitchell's personal account during 1951 as an account receivable.

The amount of the Poenack check was not traceable to Mitchell's personal account.

On June 18, 1954, Neubauer was indicted by the Circuit Court of St. Louis, Missouri, on the charge that he had embezzled the respective amounts of $5,000 and $5,259.75 from Arcade. There is no evidence that at the time of the trial of the instant proceeding, Neubauer had been tried on the aforesaid charges of embezzlement, nor has any such fact been brought to our attention subsequently by motion or otherwise.

The income tax return filed by Arcade in September 1953 for the year 1951 made no claim for the alleged embezzlement loss.

Mitchell died in March 1957.

## III. *Additions to Tax, Sec. 291(a).*

In early 1952, bankruptcy proceedings began in connection with Jefferson Loan Company. Shortly after 1952, on the petition of creditors, the business affairs of Jefferson and the books and records of Arcade (kept in the same offices) were taken over by a court-appointed receiver (Swartz) and remained in his possession until 1953 when the receivership was terminated.

In the latter part of 1953, Lubel (an employee of Mitchell) obtained the books and records of Arcade from the receiver. In 1954, an audit was made by the auditor who had previously worked for the receiver of Jefferson.

When the affairs of Jefferson were placed in receivership, Mitchell employed Edward K. Schwartz, an attorney in St. Louis, to represent him with respect to his business interests in St. Louis. Schwartz was also appointed president of Jefferson. He was "supposed to be very knowledgeable" about tax matters.

Petitioner filed its Federal income tax returns on the calendar year basis. For the taxable year 1951, it filed a tentative corporate income tax return on March 17, 1952, and requested and obtained an extension to June 15, 1952, in which to file the final return. The tentative return was signed by Edward K. Schwartz, then president of petitioner, and was filed with the collector of internal revenue for the eighth district of Illinois.

Petitioner obtained no further extension of time to file its return for 1951 beyond June 15, 1952, and it did not request or receive an extension of time in which to file its return for the taxable year 1952.

On September 3, 1953, petitioner filed its final return for the taxable year 1951 and its return for 1952 with the director of internal revenue for the forty-third district of Missouri, St. Louis, Missouri.

OPINION.

## I. *Interest Deductions.*

Respondent disallowed deductions claimed by Arcade for interest paid on two mortgage loans during the taxable years 1951 and 1952 in the aggregate amounts of $4,080 and $3,219.26, respectively. Respondent determined that said loans were actually made to and for the benefit of Joseph Mitchell, who, with his wife's estate, owned all of the stock of Arcade, and, therefore, that interest paid thereon by petitioner was personal in character, and not an ordinary and necessary expense of petitioner under section 23(a)(1)(A) of the 1939 Code.[2] In essence, it is respondent's position that the aforesaid mortgages (known as the second and third mortgage loans payable to Jefferson) had been placed on the Arcade office building by petitioner, that the corporate books show that the proceeds of said loans were charged to Mitchell, as an account receivable and used to offset other liabilities incurred by him, and, hence, that petitioner could not deduct the interest paid on the loans as proper business expense. We disagree with respondent.

At the outset, we point out that section 23(a)(1)(A), *supra,* is inapplicable as a limitation on the deductibility of the payments in question since there is a separate provision for the deduction of inter-

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  (a) EXPENSES.—
    (1) TRADE OR BUSINESS EXPENSES.—
      (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

est, i.e., section 23(b) of the 1939 Code[3] which does not require that interest, to be deductible, must be an ordinary and necessary business expense. See *Dorzback* v. *Collison*, 195 F. 2d 69 (C.A. 3, 1952).

It is axiomatic that section 23(b), *supra*, in allowing the deduction of interest refers to interest on a genuine indebtedness paid by the taxpayer in discharge of its own liability and that payments made on obligations of others do not meet the statutory requirements. *Nelson* v. *Commissioner*, 281 F. 2d 1 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court; *Guardian Investment Corp.* v. *Phinney*, 253 F. 2d 326 (C.A. 5, 1958). On the other hand, it is also well settled that a corporation formed and operated for a business purpose has (in the absence of circumstances not here present) an existence for tax purposes separate from that of its principal stockholders. *National Carbide Corporation* v. *Commissioner*, 336 U.S. 422 (1949). It is our view that the situation here presented does not warrant a disregard of the corporate entity of petitioner so as to deny it the benefit of a tax deduction for interest on its own indebtedness.

The record establishes to our satisfaction that the loans in question were made to petitioner in its corporate capacity by Jefferson, and there is no basis for an inference that Mitchell arranged with petitioner for the latter to borrow funds on his behalf as agent or coadventurer. Examination of the promissory notes involved shows that Arcade was the primary obligor of the loans from Jefferson, and we find nothing to indicate that Mitchell was a comaker or even had a secondary obligation as surety or guarantor. It is clear that there was a valid and enforcible transaction between Arcade and Jefferson as the two contracting parties. Under the terms of their mortgage agreement, in the event of any default in payments on said loans, Jefferson or its assignee would be entitled to proceed against the Arcade office building, a corporate asset of petitioner.

Furthermore, the record shows that funds in the form of checks received by petitioner from Jefferson in connection with the third mortgage loan (No. 6226), were deposited to Arcade's account. All of the proceeds of the third mortgage loan borrowed from Jefferson on July 31, 1951, in the principal amount of $15,663.29 were charged to Joseph Mitchell on petitioner's corporate books. The entry for said loans shows a third mortgage payable to Jefferson of $15,663.29, an account receivable from Mitchell of $17,170.25, prepaid interest, $1,759.25, and interest expense of $283.79. We cannot interpret these entries, however, to mean that said loans, in effect, were made directly

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.

to Mitchell or that petitioner obtained the loans merely as the agent of its principal stockholder. The facts of record show that the loans involved were made to petitioner, in its corporate capacity, using corporate assets as security for the borrowed funds. That these funds in turn were loaned to Mitchell does not, in our view, vitiate the deduction of interest by petitioner.

Under section 23(b), *supra*, all interest paid or accrued within the taxable year on genuine indebtedness of any kind entitles the taxpayer to a deduction of the amount of interest paid. Arcade borrowed the money involved for a purpose not proscribed by any provision of the Code, and, in our judgment, is entitled to the deduction claimed under section 23(b), *supra*. See *L. Lee Stanton*, 34 T.C. 1 (1960), on appeal (C.A. 2).

## II. *Alleged Embezzlement Loss.*

Petitioner contends that it sustained deductible embezzlement losses in the amount of $20,248.30 in 1951 under section 23(f)[4], as the result of the issuance of certain checks drawn on its bank account to two corporate officers, Neubauer and Poenack. Respondent, in opposition, maintains that petitioner has failed to substantiate said loss.

The burden is, of course, on petitioner to prove that the funds represented by each of the four checks in question were in fact embezzled by such corporate officers resulting in a loss.

There is no dispute that on May 14, 1951, a check for $4,677.11, payable to Charles E. Poenack, was drawn on Arcade and that three other checks, one for $5,310.50 dated May 22, 1951, one for $5,000 dated June 18, 1951, and one for $5,259.75 dated June 30, 1951, all payable to Neubauer, were likewise drawn on Arcade by its secretary-treasurer, Gaus. There is no allegation or evidence to the effect that Gaus did not have the authority as a corporate official to draw these checks on the petitioner or that she was a party to the alleged misappropriation of corporate funds or embezzlement.

Petitioner has presented the testimony of an accountant, who had made a limited check of the books and records of Arcade, in an effort to establish that Neubauer, the president of Arcade during the taxable years 1951 and 1952, actually embezzled the loan funds involved ($17,170.25) and that the money was not given to or disbursed for the benefit of Mitchell as indicated by the corporation's books. Petitioner argues that checks Nos. 1095, 1112, and 1057, in the respective amounts of $5,000, $5,259.75, and $5,310.50, plus an unexplained adjustment of $1,600, reflect the diversion or transfer of the $17,170.25 involved to Neubauer and not to Mitchell. Aside from petitioner's allegation of a

---

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:

   *         *         *         *         *         *         *

  (f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

fraudulent plan or scheme on the part of Neubauer and Poenack, there is no affirmative evidence in the record showing that the amount charged to Mitchell's account ($17,170.25) on Arcade's books was not actually paid over to him or to others on his behalf but was instead paid over to Neubauer.

Admittedly, Gaus issued some of the checks involved to Neubauer as a corporate officer, but there is no satisfactory evidence before us to establish that she wrongfully issued them or that he wrongfully appropriated the proceeds to his own use.

Petitioner has not established that the checks in question were unauthorized withdrawals; that Neubauer and Poenack were in fact guilty of misappropriation of the funds involved; or that certain amounts had been improperly or mistakenly charged to Mitchell's personal account. Furthermore, no affirmative evidence has been presented from which we can ascertain the amount allegedly diverted by the officers, an essential factor in substantiating a loss deduction under the statute. *J. J. Dix, Inc.* v. *Commissioner*, 223 F. 2d 436 (C.A. 2, 1955), affirming a Memorandum Opinion of this Court. It is true that the evidence in the record creates a suspicion of defalcations and may be a significant link in a possible chain of facts, but we do not find that the chain is complete or that the substantive elements of theft or embezzlement have been established under the laws of the State of Missouri. *Edwards* v. *Bromberg*, 232 F. 2d 107 (C.A. 5, 1956); *Curtis H. Muncie*, 18 T.C. 849, 851 (1952).

Because of the absence of certain corporate books and records the accountant called by petitioner could make only a limited audit. He could not state with certainty that the records did not show any additional salary owing to Neubauer or Poenack as an offset for the amounts in question, or any loans made to them, or that such loans, if any, were unauthorized. See *Bula E. Croker*, 27 B.T.A. 588 (1933), where we held that no embezzlement loss was established where taxpayer's agent received certain money which belonged to the taxpayer, without concealment, and had a valid claim for offsets to the amounts withheld. Petitioner has not adduced any convincing evidence to explain the fact that the loans involved were debited to the personal account of Mitchell. Considering the large amounts for which the checks in question were drawn and that the corporate officers endorsed them without concealment, we think it unlikely that they were diverting the specific funds reflected by these checks.

Gaus, who may have been able to shed some light on the checks in question, was not called as a witness by petitioner nor was her absence explained, and we cannot assume that her testimony would have been favorable to petitioner. *Wichita Terminal Elevator Co.*, 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947).

Furthermore, there is no evidence that petitioner is unable to recover any part of the allegedly embezzled funds or that it has not been compensated for by insurance or otherwise within the intendment of section 23(f). See *Gottlieb Realty Co.*, 28 B.T.A. 418 (1933).

There is no evidence that either Neubauer or Poenack was convicted of embezzlement of any part of the funds in question. Petitioner's counsel, in his opening statement, said in effect that Neubauer had been indicted with respect to two of the checks in question (those dated June 18 and June 30, 1951) and explained that as to the others, indictment was barred by limitations. He added that "those causes are still, so far as I am aware, pending." We can only assume that if there had been a conviction of either Neubauer or Poenack or both, it would have been called to our attention in an appropriate manner. Mere indictment for embezzlement, of itself, is insufficient to sustain petitioner's burden of proof. While conviction is not indispensable in establishing an embezzlement loss, *Gottlieb Realty Co.*, *supra*, in the absence of conviction, the facts presented to us in the instant case are not sufficient to sustain petitioner's burden.

Petitioner, on reply brief, citing *inter alia*, *J. H. Robinson Truck Lines* v. *Commissioner*, 183 F. 2d 739 (C.A. 5, 1950), reversing a Memorandum Opinion of this Court, contends that its position must be sustained since its testimony was uncontradicted. We have painstakingly evaluated petitioner's evidence on this issue and find it inconclusive. The auditor's testimony was admittedly based on a limited examination of Arcade's records. His testimony on this subject likewise was vague and inconclusive. The testimony is, in general, incomplete, and not of a character which we may deem inherently probable. Under all of the circumstances, we are not obligated to accept it. See *Burford-Toothaker Tractor Co.* v. *Commissioner*, 192 F. 2d 633 (C.A. 5, 1951), affirming a Memorandum Opinion of this Court; *Carmack* v. *Commissioner*, 183 F. 2d 1 (C.A. 5, 1950), certiorari denied 340 U.S. 875; *Hightower* v. *Commissioner*, 187 F. 2d 535 (C.A. 5, 1951), affirming a Memorandum Opinion of this Court.

We hold, therefore, that petitioner has failed to establish the alleged embezzlements.

### III. *Addition to Tax, Sec. 291 (a).*

Petitioner filed a tentative corporate income tax return (Form 1120) for the taxable year 1951 on March 17, 1952. Said form was signed by Edward K. Schwartz as president. No income or expense items were shown but an estimated tax of $100 was reported. Petitioner requested and was granted an extension of time to June 15, 1952, in which to file a completed return for 1951. No further extension was

granted and petitioner did not file its completed return for the taxable year 1951 until September 3, 1953.

The petitioner did not file its return for the taxable year 1952 until September 3, 1953. It did not file a tentative return or request any extension of time in which to file its return for that year and no extension was granted for that purpose.

Respondent determined that petitioner's failure to file its tax returns for each of the taxable years within the period allowed by statute was not due to reasonable cause within the meaning of section 291(a) of the 1939 Code. See Regs. 111, sec. 29.291–1; *Southeastern Finance Co. v. Commissioner*, 153 F. 2d 205 (C.A. 5, 1946), affirming 4 T.C. 1069, 1087 (1945). The issue presented is one of fact and the burden of establishing reasonable cause is on the petitioner. *Wm. J. Lemp Brewing Co.*, 18 T.C. 586, 597 (1952).

It is well established that Forms 1120 filed within the allotted time do not qualify as returns within the meaning of section 52 [5] where they do not state specifically the items of gross income and the deductions and credits allowed. *Leo Sanders*, 21 T.C. 1012, 1018 (1954), affd. 225 F. 2d 629 (C.A. 10, 1955), certiorari denied 350 U.S. 967 (1956). Hence, petitioner's skeleton or tentative return with no information except an arbitrary amount labeled as tax due cannot be regarded as a return within the intendment of the statute.

We have carefully considered the testimony of Lubel (who was not an officer or employee of petitioner, but had been employed by Mitchell) to the effect that the receiver and later the trustee in bankruptcy would not release the books so that tax returns could be prepared. The record discloses no serious effort to obtain access to the books or to file timely returns. The fact that the receiver may have refused Lubel or the corporate officers permission to remove the books from the premises where kept does not establish that they could not have examined the books for the purpose of preparing returns without removing them from the custody of the receiver. Even if such permission had been specifically denied, there is no reason to believe that Schwartz, an attorney as well as president of petitioner, could not have gained access to the books by order of the court on proper ap-

---

[5] SEC. 52. CORPORATION RETURNS.

(a) REQUIREMENT.—Every corporation subject to taxation under this chapter shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer. *In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations* are required to make returns. *Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control.* [Emphasis added.]

plication.[6]  Schwartz, who no doubt could have enlightened this Court, was not produced as a witness.  We cannot assume that his testimony, if produced, would have been helpful to petitioner, which bore the burden of proof.  Moreover, if Lubel or Schwartz, after proper effort, could not obtain the books in order to prepare and file the returns within the prescribed time, petitioner could have been relieved of the necessity of filing said returns upon presentation of all the facts alleged as a reasonable cause for such noncompliance in an affidavit to the collector as prescribed by Regulations 111, section 291–1. In the absence of a proper showing, however, it was required to make and file a timely return.  *Beck Chemical Equipment Corporation*, 27 T.C. 840, 859 (1957); *Harrington Co.*, 6 T.C. 721, 727 (1946).

We need not consider the question of whether the duty to file the required income tax returns rested with petitioner's officers or the receiver or trustee in bankruptcy.  The fact is that the returns were not timely filed.  Petitioner has not established where the responsibility lay.  Even if we assume that it rested with the receiver or trustee under section 52(a), we nevertheless fail to find any exception to the application of section 291(a) if the delinquency was not due to reasonable cause.  See *Pinkerton* v. *United States*, 170 F. 2d 846 (C.A. 7, 1948).  Regardless therefore of whether the receiver or trustee on the one hand, or the corporate officers, bore the responsibility, and whichever may have been delinquent in performing the duty to make and file a timely return for each of the taxable years involved, since the return is that of the corporation and not of the individuals in charge of its affairs, petitioner's excuse does not constitute reasonable cause.

Petitioner argues that it relied in good faith upon the services of Schwartz (who was "very knowledgeable" of tax matters).  But Schwartz was president of petitioner, and, as such, signed not only the tentative return for 1951, but also the final returns for 1951 and 1952.  Assuming *arguendo* the contention that he was knowledgeable of tax matters and was advised of the facts, we can only infer that he must have known of the requirements of the law, but nevertheless took no appropriate steps as president of the company to comply with such requirements.  The fact that the president of the company was also a lawyer familiar with tax matters would seem to us to eliminate rather than support the view that the delinquencies were due to reasonable cause.  Petitioner has presented no circumstances which merit a different view in the instant case.  See *F. E.*

---

[6] Lubel testified as follows:

"Q: You were not specifically denied those books by any person for the purpose of making Federal returns, were you?

A: No, sir, I wasn't.

\*      \*      \*      \*      \*      \*      \*

The Court: Mr. Lubel, as far as you know, did anyone file any proceedings in the court to procure the books or to have entry to them in order to make out income tax returns?

Witness: No, sir."

*McGillick Co.*, 30 T.C. 1130, 1149 (1958), affirmed so far as significant on this issue, 278 F. 2d 643 (C.A. 3, 1960).

*Davis* v. *Commissioner*, 184 F. 2d 86 (C.A. 10, 1950), reversing a Memorandum Opinion of this Court, which petitioner cites, was a fraud case in which the burden was on respondent to prove bad faith. The record shows that the independent accountant upon whom the taxpayer relied for tax advice in that case had over 20 years of extensive tax experience; that there had been a full disclosure of the facts to the accountant; and that he had advised the taxpayer on tax matters in previous years. It is clear that *Davis* is distinguishable on its facts from the case at bar.

In the light of the foregoing, we hold that petitioner has not met the burden of proving that its failure to file a timely return for the years 1951 and 1952 was due to reasonable cause. Accordingly, we approve the imposition of an addition to tax for said years under section 291(a), *supra*. See *Creswell* v. *Commissioner*, 278 F. 2d 722 (C.A. 5, 1960), affirming per curiam on this point a Memorandum Opinion of this Court.

*Decision will be entered under Rule 50.*