Joseph Rizzo v. Commissioner.
Rizzo v. Commissioner
Docket No. 70699.
United States Tax Court
T.C. Memo 1961-265; 1961 Tax Ct. Memo LEXIS 83; 20 T.C.M. (CCH) 1379; T.C.M. (RIA) 61265; September 21, 1961
*83 1. Petitioner's partner-wife withdrew $30,000 from the partnership bank account in 1951 without petitioner's knowledge and lost it in a subway station in 1952 after petitioner had discovered the loss and threatened an action for accounting. Petitioner's wife instituted divorce proceedings in 1952. By agreement in June 1952 petitioner and his wife settled all their marital, business, and financial affairs. Held, petitioner failed to prove that he suffered a loss deductible under section 23(e), I.R.C. 1939, in the year 1952. 2. Amount of deductions for entertainment, etc., expenses determined. 3. Held, petitioner is liable for addition to tax under section 294(d)(2), I.R.C. 1939, for the year 1951. Morton Silfen, Esq., for the petitioner. Edward H. Hance, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in income tax due from petitioner for the taxable years 1951, 1952, and 1953 in the amounts of $349.92, $2,865.77, and $110.16, respectively, and an addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939 for the taxable year 1951 in the amount of $206.10. The issues for decision are: (1) Whether petitioner is entitled to deduct as a loss incurred in his trade or business for the taxable year 1952 his proportionate share of cash withdrawn from his partnership bank account by his partnerwife in 1951 and lost by her in a subway station in 1952. (2) Whether petitioner's partnership is entitled to deduct for the year 1951 the amount of $913.93, representing "entertainment" and "petty cash disbursements," and whether petitioner is entitled to deduct for the year 1952 the amount of $410, representing expenditures for "Xmas gifts and entertainment." (3) Whether petitioner is liable for an addition to tax under section 294(d)(2) of the 1939 Code for the taxable *85 year 1951. Petitioner did not assign error with respect to the deficiency for 1953. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Joseph Rizzo and Quintina Ingrao (hereafter referred to as Quintina) were married in 1938. They were husband and wife in 1951, residing in New York City, and filed a joint Federal income tax return for that year with the collector of internal revenue in New York. They were divorced in 1952 and Joseph filed an individual Federal income tax return for the taxable year 1952 with the district director of internal revenue for the Upper Manhattan District of New York. Joseph and Quintina were engaged in business as equal partners from 1942 to 1951 under the firm name of Blue Bell Garment Company (hereafter referred to as Blue Bell) The partnership was engaged in dress contracting; that is, assembling precut dresses for delivery to jobbers. Both Joseph and Quintina were active in the business. A checking account in the name of Blue Bell was maintained at the National City Bank of New York, 34th Street Branch. Quintina, who with Joseph signed checks on this account, made withdrawals from this account for personal *86 and business uses, including payroll. The partners permitted funds to accumulate in the partnership account. In 1951 the balance in the partnership account was as high as $37,000-$40,000. Blue Bell was paid regularly by the jobbers for dress deliveries, and since no more than $5,000 to $7,000 was required by the partnership to cover payrolls, there was no need for the partnership to maintain a large balance in its account. Quintina and Joseph each had a savings account, but it does not appear that either of them had a checking account. In late 1951 Joseph and Quintina were having marital difficulties. Quintina presented two blank checks drawn on the partnership bank account to Joseph for his signature. Joseph, believing the checks were for ordinary expenses, signed them. Later, Quintina completed the checks, making them each payable for $15,000. In November 1951 she cashed the checks at the 34th Street Branch of the National City Bank of New York and placed the cash in a safety deposit box at the Manufacturers Trust Company Branch on East Fordham Road. Joseph and Quintina separated on or about December 6, 1951. On or about December 10, 1951, Joseph was informed by his accountant *87 that two withdrawals had been made from the partnership bank account in November. An immediate search of the office safe disclosed that two United States Government Series E bonds, each in the amount of $5,000, issued in Joseph's and/or Quintina's names, were missing. Cash in the approximate amount of $1,500 was also found to be missing from the safe. Joseph consulted an attorney. Quintina was still a partner of Blue Bell and her signature, as well as Joseph's, was necessary on checks drawn on the partnership bank account. Joseph's attorney prepared the necessary papers to institute an action for an accounting against Quintina. Although these papers may have been prepared earlier, the action was commenced in April 1952. Sometime prior to June 1952 Quintina instituted a suit for divorce against Joseph and was awarded temporary alimony in excess of $100 per week, none of which was paid to her by Joseph. In early January 1952 Quintina agreed to bring the cash, which at that time amounted to between $30,000 and $40,000, the bonds having been redeemed, to the office of Joseph's lawyer to be kept in escrow until she and Joseph could resolve their differences. On the morning of January 19, 1952, Quintina, *88 accompanied by her maid, withdrew the cash from her safety deposit box in the East Fordham Road Branch of the Manufacturers Trust Company. She placed the cash in a manila envelope. Both women started for the lawyer's office via a subway station where Quintina, carrying the manila envelope, her handbag, and a newspaper, entered the restroom in the station. After both women boarded the train Quintina discovered that she no longer had the manila envelope with her. At this time Quintina, who had been ill, became hysterical. The maid reported the loss to the stationmaster, and the police were notified. Quintina did not continue on to the lawyer's office. [1]
At the time of trial, despite an intensive investigation by the police, no part of the cash, which Quintina concluded she had misplaced in the restroom in the subway station, had been recovered. Loss of the cash was not covered by insurance. On June 6, 1952, Joseph and Quintina entered into the following agreement: MEMORANDUM OF AGREEMENT BETWEEN QUINTINA RIZZO AND JOSEPH RIZZO MADE ON JUNE 6, 1952. Mr. Rizzo of Bluebell Gmt., 535 8th Avenue, agreed to pay *89 Mrs. Rizzo the sum of $6,500.00 in full settlement of her share of right, title and share in the firm of Bluebell Gmt., 535 8th Avenue, together with all income to date. Mrs. Rizzo agreed to remove herself from the membership in the United Better Dress Manufacturers Ass'n. Inc. and to assign all rights and interest therein to Mr. Joseph Rizzo. Mr. Rizzo agrees to a 50% split in the registration provided the firm of Leonard Arkin & Son., 530 7th Avenue, consents to this split of registration to Mrs. Rizzo, on or before January 31st, 1953. Should Mrs. Rizzo fail to obtain the consent of Leonard Arkin & Son on or before January 31st, 1953, she waives all rights, interest and title to that one-half share in the registration, at presently held in the Bluebell Gmt. The aforementioned sum of $6,500.00, paid by Mr. Rizzo to Mrs. Rizzo is also accepted in full payment of all past due and future alimony and counsel fees, including the provisions made in the order of Mr. Justice O'Brien. It is further agreed that in the event the sum of $36,000.00 which was lost by Mrs. Rizzo, several months ago, is located, that the parties hereto agree that 1/3 of whatever sum is found shall be paid *90 to Mr. Rizzo. That Mr. Rizzo shall turn over the sum of $6,500.00 by certified check or cash to his attorney P. Vincent Landi, on or before June 10, 1952; upon receipt of this money, the sum of $3,500.00 shall forth-with be paid to Aaron A. Cohen, attorney for Mrs. Rizzo and the balance of the sum of $3,000. shall be held in escrow by P. Vincent Landi, attorney for Mr. Rizzo, to be paid over to Aaron A. Cohen, upon the following terms and conditions: (a) That upon receipt of sum of $3,500.00 both parties and their attorneys shall execute and exchange a discontinuance and settlement of the dissolution and accounting action, without costs to either party and a withdrawal of the motion to appoint a receiver. (b) That the action for a divorce pending in Bronx County shall proceed further and the defendant therein Joseph Rizzo shall withdraw his answer and the action shall continue as an undefended divorce action. (c) The parties agree that upon receipt of payment of $3,500.00 they shall execute such papers as are necessary to vacate the order of temporary alimony of Justice O'Brien and agree to withdraw the motion for alimony and counsel fee together with the motion for a judgment; *91 pending in Bronx County. (d) Upon obtaining a final decree and judgment in the divorce action, Joseph Rizzo and P. Vincent Landi agree to pay to Mrs. Quintina Rizzo and Aaron A. Cohen her attorney the escrow money in the sum of $3,000.00. That Joseph Rizzo agrees to pay any and all taxes now due or to become due and agrees to hold Quintina Rizzo harmless from payment or penalties thereof. That the parties agree to sign any and all papers necessary to effectuate the terms and conditions set forth in this agreement and if either party refuses to sign, then the attorneys shall be empowered to sign on their behalf. That the parties hereby agree that the account in the National City Bank shall be assigned to Mr. Rizzo. The account is in the name of Bluebell Garment Co. The parties agree that there are two notes payable to Joseph Rizzo and that one of the said notes shall be endorsed over to Mrs. Rizzo simultaneously with the paying of $3,500.00. JOSEPH RIZZO QUINTINA RIZZO On January 1, 1951, the balances in both Joseph's and Quintina's partnership capital accounts were $14,063.87. During 1951 their shares of the partnership's income in the amount of $11,218.63 [2] each were *92 credited to their capital accounts. For the same year Quintina's capital account was charged with withdrawals in the amount of $37,206.73. Joseph's capital account was charged with withdrawals in the amount of $7,206.74 for the same year. On the partnership's return filed for the year 1951 the amounts of $1,297.12 and $503.75 were deducted as entertainment expenses and petty cash disbursements, respectively. Respondent disallowed one-half of the total of these expenses claimed. Of the $913.93 disallowed by respondent, the partnership Blue Bell is entitled to deduct the amount of $77.07 as a business deduction. On his income tax return filed for the year 1952 Joseph claimed the amount of $12,000 as a deduction for the loss of business property due to loss by Quintina of the money she was carrying on January 19, 1952. Joseph failed to prove he suffered a deductible loss in 1952 in the amount of $12,000. For the taxable year 1952 Joseph also deducted the amount of $820 as entertainment expenses. Respondent disallowed $410 of this amount. Of the $410 disallowed by respondent, Joseph is entitled to a business deduction in the amount of $260. The income *93 tax returns filed by the partnership for the taxable year 1951, by Joseph and Quintina, jointly, for the year 1951, and by Joseph, individually, for the year 1952 were prepared by a certified public accountant who also prepared the declaration of estimated tax filed by Joseph and Quintina for the year 1951. The joint income tax return for the year 1951 reported payments on estimated tax of $2,250 and income tax due in the amount of $5,335.04. Opinion Petitioner deducted $12,000 [3] on Schedule C of his individual income tax return for the year 1952 as "Losses of business property." In a statement attached to the return explaining this item petitioner recited the facts substantially as outlined above, and stated further that in a subsequent settlement worked out between Joseph and his divorced wife, she relinquished all her interest in Blue Bell "and, upon receiving another $6,500.00 * * * in cash, all further claims to alimony." The statement also said that Quintina acknowledged Joseph's claim to $12,000 of the lost funds ($36,000) and agreed to pay him such sum if the money should ever be recovered. In the notice of deficiency respondent disallowed the deduction on the stated ground *94 that it had "not been substantiated as allowable under the provisions of the Internal Revenue Code." As we understand petitioner's argument on brief, he contends that the $12,000 (or $15,000) is deductible under section 23(e)(1) of the 1939 Code [4] as a loss, not compensated for by insurance or otherwise, incurred in his trade or business, because the funds were withdrawn from the partnership bank account for the purpose of safeguarding them for the requirements of the business; and, alternatively, that even if it be found that Quintina withdrew the funds for her own use, the loss would be deductible as a theft by Quintina. *95 With respect to petitioner's alternative argument, petitioner has not proved that Quintina stole or intended to steal the funds; but even if she did, the theft must have taken place in 1951 when she withdrew the funds from the partnership bank account and Joseph found out about it. There is no evidence that Quintina stole or attempted to steal the lost funds in 1952, the year in which the deduction is claimed. We need not decide whether any loss suffered by Joseph is deductible under section 23(e)(1) as a loss incurred in his trade or business, because in our opinion Joseph has failed to prove that he incurred a loss in 1952 or the amount thereof. It would appear from the record before us that in all likelihood Joseph received full credit for his share of the funds lost by Quintina in the settlement agreement entered into between them on June 6, 1952; at least the record indicates it was taken into consideration and there is nothing to indicate what part, if any, of Joseph's share of the lost funds Joseph did not receive credit for in the settlement. The evidence indicates Joseph and Quintina were equal partners in Blue Bell. Schedule J, Reconciliation of Partners' Capital Accounts, *96 of the partnership return for 1951 indicates that the $30,000 withdrawn by Quintina from the partnership bank account in 1951 was charged to her partnership capital account. Each partner had a capital account at the beginning of the year in the amount of $14,063.87, both were credited with income for the year 1951 in the amount of $11,218.63, [5] but Joseph was charged with withdrawals of only $7,206.74 while Quintina was charged with withdrawals of $37,206.73, or $30,000 more than Joseph, leaving a deficit of $11,924.23 in her account at the end of 1951 whereas Joseph's account contained a balance of $18,075.77. Joseph instituted an action for an accounting of partnership funds against Quintina in April 1952. Quintina instituted an action for divorce against Joseph and was awarded temporary alimony in excess of $100 per week sometime prior to June 6, 1952. In the settlement agreement between the parties dated June 6, 1952, Quintina was to be paid $6,500 in full settlement for her share of the business and all income to date. The $6,500 was also accepted by Quintina in full payment of all past due and future alimony and counsel fees, and $3,500 thereof was *97 to be paid to Quintina's attorney at once. The parties also agreed that Joseph would discontinue the accounting action, that Quintina would withdraw her motion for alimony and counsel fees in the divorce action, and that Joseph would withdraw his contest of the divorce action. The agreement also provided that if the sum of "$36,000" lost by Quintina was located, one-third of any sum recovered would be paid to Joseph. There is no evidence showing the net worth of the partnership as of June 6, 1952, when Quintina transferred her interest to Joseph, nor of the income of the partnership from the first of the year until that date. However, had Quintina not withdrawn the $30,000 in 1951 the net worth of the partnership at the end of that year would have been $36,151.54, one-half of which, or $18,075.77, would have belonged to Quintina. But in June 1952 Quintina settled all of her share in the partnership and any earnings it may have had up to date, all her claims to back and future alimony, and all her claims for attorney fees in the divorce action in return for $6,500 to be paid by Joseph and Joseph's agreement not to contest the divorce action. In addition, Quintina agreed to pay Joseph *98 one-third of the lost money if it was recovered. We do not know from the record what the value of the interest in the business received by Joseph was nor the extent of his possible obligations to Quintina arising from their marriage and the divorce action, but it is obvious that in the settlement agreement at least a part of the funds lost by Quintina was treated as withdrawals by her and as her funds. Such being the case the money lost by Quintina was a loss to Quintina, not to Joseph. Any loss that might be attributed to Joseph would appear to have been used to some extent at least to offset his personal obligations to Quintina for her share of the partnership business and his marital obligations to her. See Grover Tyler, 13 T.C. 186 (1949). The only evidence in support of the $12,000 loss figure claimed by petitioner on his return is the statement in the settlement agreement that if the $36,000 was located, Quintina would pay one-third of any sum recovered to Joseph. But although both Joseph and Quintina testified, no effort was made to explain how this figure was arrived at or the basis for the settlement agreement. The burden was on Joseph to prove that he suffered *99 a loss deductible under section 23(e) and the amount thereof, and having failed to do so, we must decide this issue in favor of respondent. See Arcade Realty Co., 35 T.C. 256 (1960). Furthermore, it is doubtful that Joseph has proved that the money lost by Quintina was a business asset. She withdrew only $30,000 from the partnership bank account, so $6,000 of the $36,000 lost must have come from cashing the Government bonds, which were not partnership assets. Also, the partnership bank account was simply an accumulation of the partners' profits which they failed to withdraw, and the balance in the account was considerably in excess of the needs of the business. [6] Quintina testified that she drew on this account not only for business expenses but also for groceries and other personal living expenses. The loss would appear to be a loss of funds previously withdrawn from the business rather than a loss of funds used in the business. The second issue concerns the deduction of entertainment and miscellaneous expenses. The partnership claimed deductions of $1,297.12 *100 for "entertainment" and $530.75 for "petty cash disbursements" on its return for 1951. Joseph claimed a deduction of $820 for "Xmas gifts & Entert." on his 1952 return. Respondent disallowed one-half of each, or a total of $913.93 to the partnership in 1951, and $410 to Joseph in 1952, for the reason they had not been substantiated. When respondent simply disallows 50 percent of a claimed deduction for lack of substantiation it is difficult for both petitioner and the Court to know just what proof is required of petitioner unless petitioner proves every item going to make up the total of the deduction claimed. Nevertheless the burden is on petitioner to prove the deduction. Joseph testified that it was necessary and customary in his business for dress contractors to pool their funds to make gifts and provide entertainment for the employees of dress jobbers at Easter and Christmas times and that these amounts were paid in cash. He produced canceled checks and a check stub drawn on the partnership account in 1951 totaling $991, and a check drawn on his account in 1952 in the amount of $670, which he testified were used for this purpose. The accountant who took care of the business *101 books and prepared the returns testified that he classified these checks for entry on the books and the returns in accordance with information given to him by Joseph at the time. There was no evidence to contradict Joseph. Based on all the evidence, we have found as a fact that $77.07 of the $913.93 disallowed by respondent for 1951 and $260 of the $410 disallowed by respondent for 1952 are deductible as business expenses by the partnership and Joseph respectively. The third issue is with respect to the imposition of an addition to tax under section 294(d)(2) for the taxable year 1951. Petitioner's return for the year 1951 shows payments on declaration of estimated tax in the amount of $2,250, and indicates an income tax liability of $5,335.04. The petition states as a basis for respondent's error in determining the addition to tax that the underestimation of estimated tax was due to reasonable cause and not to willful neglect. On brief petitioner argues that inasmuch as the declaration of estimated tax was prepared by taxpayer's accountant on the basis of earnings for the previous year, the estimates were prepared in good faith and the taxpayer did not willfully underestimate his *102 tax and, therefore, the addition to tax should not be imposed. This Court has held that reasonable cause is not a defense to the imposition of the addition to tax under section 294(d)(2). H. R. Smith, 20 T.C. 663 (1953). By the express provisions of section 294(d)(2) the addition to tax is not applicable for any taxable year in which the taxpayer makes timely payment of estimated tax in an amount at least as great as though computed on the basis of tax shown on the return for the preceding year (except for taxpayer's exemption and dependency credits for the current year). Petitioner's accountant testified that he prepared Joseph's returns for both 1950 and 1951 and that according to his usual custom he would have prepared Joseph's declaration of estimated tax for 1951 on the basis of his income for the year 1950. However, neither petitioner's return for the year 1950 nor the declaration of estimated tax for the year 1951 was offered in evidence, and we have no proof of any facts with respect to petitioner's income for the year 1950 nor direct proof that the declaration of estimated tax for the year 1951 was based on facts shown on the return for the preceding year. *103 Had petitioner relied on the exception contained in the statute and offered evidence that the documentary proof which was necessary to bring him within the exception was not available to him, we might have accepted the accountant's testimony as sufficient evidence to bring petitioner within the exception because respondent offered no contrary or rebuttal evidence, even though such evidence would have been in respondent's possession had it existed. However, on the proceedings as they stand and the evidence presented, we are unable to find that petitioner has proved that the addition to tax should not be imposed. Consequently respondent's determination in this issue is sustained. Decision will be entered under Rule 50. Footnotes
1. This is according to the uncontradicted testimony of Quintina.↩
2. $11,218.64 for Joseph.↩
3. At the trial, counsel for petitioner indicated that petitioner's contention was that he was entitled to a deduction in the amount of $15,000. However, petitioner claimed $12,000 on his return and did not claim an increased deduction in his petition. In view of our holding, it is immaterial what amount has been claimed by petitioner.↩
4. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise. - (1) if incurred in trade or business; * * *↩
5. See footnote 2.↩
6. The evidence indicates the partnership needed only $5,000 to $7,000 cash to operate the business.↩